United States Court of Appeals,

Eleventh Circuit.

Nos. 93-9158, 93-9324.

Sybille G. WOOTEN, Individually and as Administratrix of the Estate of Daniel M. Wooten, Plaintiff-Appellee,

v.

Carol CAMPBELL, Individually, Nancy P. Gilbert, Individually, Ruth Y. Hicks, Individually, Pat Keating, Individually, Jane Doe, No. 1, Individually, Jane Doe, No. 2, Individually, John Doe, No. 1, Individually, John Doe, No. 2, Individually, Joanne Gaynor, Defendants-Appellants.

Sybille G. WOOTEN, Individually and as Administratrix of the Estate of Daniel M. Wooten, Plaintiff-Appellee,

v.

Douglas G. GREENWELL, Johnny V. Lewallen, Gerald V. Gouge, Betty Wrights-Robinson, Gail Ormsby, John Doe No. 1, John Doe No. 2, Jane Doe, No. 1, and Jane Doe No. 2, Defendants-Appellants.

Sybille G. WOOTEN, Individually and as Administratrix of the Estate of Daniel M. Wooten, Plaintiff-Appellee,

v.

Carol CAMPBELL, Individually;  Nancy P. Gilbert, Individually; Ruth Y. Hicks, Individually;  Pat Keating, Individually;  Joanne Gaynor, Defendants-Appellants,

Jane Doe, No. 1, Individually;  Jane Doe, No. 2, Individually; John Doe, No. 1, Individually;  John Doe, No. 2, Individually, Defendants.

Sybille G. WOOTEN, Individually and as Administratrix of the Estate of Daniel M. Wooten, Plaintiff-Appellee,

v.

Douglas G. GREENWELL;  Johnny V. Lewallen;  Gerald V. Gouge; Betty Wrights-Robinson;  Gail Ormsby, Defendants-Appellants,

Jane Doe No. 1;  Jane Doe No. 2;  John Doe No. 1;  John Doe No. 2, Defendants.

April 6, 1995.

Appeals from the United States District Court for the Northern District of Georgia.  (Nos. 1:92-cv-2047, 1:93-cv-218), Marvin H.

Shoob, District Judge

Before KRAVITCH and DUBINA, Circuit Judges, and GIBSON[*], Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellants/defendants, officers and employees with the Georgia Department of Human Resources ("DHR"), and the Forsyth County Department of Family and Children Services ("DFACS"), appeal the district court's order denying their motion to dismiss or, in the alternative, motion for summary judgment. Defendants alleged in their motion and contend on appeal that the plaintiff/appellee, Sybille G. Wooten ("Wooten") fails to state a claim upon which relief can be granted and that the defendants are entitled to qualified immunity.[1] Because we hold that Wooten fails to establish the violation of a constitutional right, we reverse the order of the district court denying the defendants' motion to dismiss or, in the alternative, motion for summary judgment.[2]

---

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]Defendants also allege in their motion to dismiss that they are entitled to relief because the present litigation is barred by the "*Rooker-Feldman*" doctrine, *see District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); that Wooten's section 1983 claim is barred by the Eleventh Amendment; and Wooten's state tort claim is barred by sovereign immunity.

[2]The district court erred in the first prong of its analysis and, therefore, we need not discuss the remaining defenses raised by the defendants. We note, however, that *assuming arguendo* there is a violation of a constitutional right, the defendants are clearly entitled to qualified immunity. *See Spivey v. Elliott,* 41 F.3d 1497 (11th Cir.1995); *Lassiter v. Alabama A & M University,* 28 F.3d 1146 (11th Cir.1994) (en banc); *Courson v. McMillian,* 939 F.2d 1479 (11th Cir.1991). Under the qualified immunity standards, Wooten fails to demonstrate that the defendants violated a clearly established right. It was not

## I. FACTS AND PROCEDURAL HISTORY

This is a tragic case. In June 1990, Wooten received a protective order from the Superior Court of Forsyth County, Georgia, giving her custody of her son, Daniel, and enjoining Daniel's father, Michael Wooten ("Michael") from coming within 500 yards of Wooten or Daniel. Shortly thereafter, Michael abducted Daniel from day care and a month later Michael was arrested for felony interference with custody. Upon notice from the Forsyth County Sheriff's Office, the county DFACS became involved in Daniel's case and petitioned the county Juvenile Court for temporary legal custody of Daniel.

In August 1990, the Juvenile Court gave custody of Daniel to the DHR acting through the DFACS and also gave the DHR authority to place Daniel. Both of Daniel's parents consented to this custody arrangement. The DHR and DFACS, after an investigation, placed Daniel in Wooten's home and allowed Michael to visit him once every two weeks under the supervision of DFACS caseworkers. Beginning in November 1990, the DHR and DFACS allowed Michael to have unsupervised visits with his son. During a January 31, 1991, unsupervised visit, Michael abducted Daniel. Nearly two months later, when police found Daniel and Michael, they discovered that Michael had shot and killed Daniel and then Michael had committed

---

clearly established law then or now that these caseworkers could expect to be liable when a child, in their legal, but not their physical custody, is harmed by a natural parent while in the physical custody of the other natural parent. The district court's conclusion that the law is clearly established with regards to this matter relied upon cases dealing with foster care, not with a natural parent. We see a distinct difference in the two situations.

suicide.

Wooten brought this action under 42 U.S.C. § 1983 alleging that the defendants violated Daniel's constitutional rights under the Fourteenth Amendment Due Process Clause by failing to protect him from Michael. Wooten also asserted a state law claim for wrongful death. Wooten alleges that the defendants were reckless in granting Michael unsupervised visits when the evidence showed that Michael posed a significant risk of danger to Daniel. She also alleges that defendants of the state DHR interfered with the county DFACS's management of Daniel's case and required the DFACS to allow Michael to have unsupervised visits with Daniel. The defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment asserting various grounds for entitlement to relief, including qualified immunity. The district court denied the motion, and the defendants appeal that order.

## II. ANALYSIS

We note at this juncture that the Rule 12(b)(6) defense and the qualified immunity defense become intertwined. Under Rule 12(b)(6), the defendants can defeat Wooten's cause of action if her complaint fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the qualified immunity defense, the defendants are immune from liability if Wooten's complaint fails to state a violation of a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As the Supreme Court states, "[a] necessary concomitant to the determination of whether

the constitutional right asserted by a plaintiff is "clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).  Accordingly, we must first undertake an examination of Wooten's complaint to determine if she possesses a right subject to a constitutional violation.  *Id.*[3]

The question we must resolve is whether a substantive due process right is implicated where a public agency is awarded legal custody of a child, but does not control that child's physical custody except to arrange court-ordered visitation with the non-custodial parent.  The substantive component of the Due Process Clause protects only those rights which are fundamental. *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). Substantive due process rights are created only by the Constitution, not by state laws. *Id.* "A finding that a right

---

[3]Our court has not specifically stated which analysis comes first—the establishment of a violation of a constitutional right or the establishment of a violation of a "clearly established' constitutional right (readily analogized to the question:  which came first, the chicken or the egg?).  There are several cases in our circuit and in other circuits, however, which intimate that the first question to be answered in this analytical framework is whether the plaintiff establishes the violation of a constitutional right. *See, e.g., Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993);  *Burrell v. Board of Trustees of Georgia Military Colllege,* 970 F.2d 785, 792 (11th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993);  *Sivard v. Pulaski Co.,* 17 F.3d 185 (7th Cir.1994);  *Johnston v. City of Houston,* 14 F.3d 1056 (5th Cir.1994).

merits substantive due process protection means that the right is protected "against certain government actions regardless of the fairness of the procedures used to implement them.' " *Id.* (*quoting Collins v. City of Harker Heights,* 503 U.S. 115, ----, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (internal quotations omitted)). Hence, tort law remains largely outside the scope of the substantive due process jurisprudence. *McKinney,* 20 F.3d at 1556.

The district court analogized this case to a foster care situation when it found that Wooten stated a claim for a violation of a constitutional right. This analysis is flawed in one major respect: Daniel was in the physical custody of his natural mother, not in a third-party foster home. Wooten maintained Daniel's clothes, food, and shelter. In a foster care situation, the state places the child, whether voluntarily or not, into the care of persons the state has chosen. These foster families provide for the child's physical needs on behalf of the state. The state exercises control and dominion over the child in a foster care situation and, accordingly, if a child is injured by a foster family, he or she has a section 1983 claim for a violation of a constitutional right. *See Taylor by and through Walker v. Ledbetter,* 818 F.2d 791 (11th Cir.1987) (en banc), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989).

The facts of this case are very similar to the facts in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney,* a minor child was severely beaten by his natural father despite knowledge by state social workers of the father's violent

propensities.  In rejecting the plaintiff's claims, the Supreme

Court held:

> when the State by the affirmative exercise of its power so
> restrains an individual's liberty that it renders him unable
> to care for himself, and at the same time fails to provide for
> his basic human needs—e.g., food, clothing, shelter, medical
> care, and reasonable safety—it transgresses the substantive
> limits on state action set by the Eighth Amendment and the Due
> Process Clause.  The affirmative duty to protect arises not
> from the State's knowledge of the individual's predicament or
> from its expressions of intent to help him, but from the
> limitation which it has imposed on his freedom to act on his
> own behalf.  In the substantive due process analysis, it is
> the State's affirmative act of restraining the individual's
> freedom to act on his own behalf—through incarceration,
> institutionalization, or other similar restraint of personal
> liberty—which is the "deprivation of liberty' triggering the
> protections of the Due Process Clause, not its failure to act
> to protect his liberty interest against harms inflicted by
> other means.

489 U.S. at 200, 109 S.Ct. at 1005-06 (citations omitted).

The Court also noted that "nothing in the language of the Due

Process Clause itself requires the State to protect the life,

liberty, and property of its citizens against invasion by private

actors."  *Id.* at 195, 109 S.Ct. at 1003.  The purpose of the Due

Process Clause is to protect the people from the State, not to

ensure that the State protect the people from each other.  *Id.* at

196, 109 S.Ct. at 1003.  "As a general matter, then, we conclude

that a State's failure to protect an individual against private

violence simply does not constitute a violation of the Due Process

Clause."  *Id.* at 197, 109 S.Ct. at 1004.

As in *DeShaney,* Michael was a private actor.  Wooten had

physical custody of Daniel and had consented to visits by Michael.

Wooten took no legal action to prevent the unsupervised out of

office visits nor the overnight visit at Michael's parents' home.

R 4-7, Exh. 3 & 4.  Wooten signed a case panel review which

expressly stated that Michael would be allowed two hour visits away from the office.  Id.  After initially placing Daniel in Wooten's home, the state's only role was monitoring and arranging for the visitation between Daniel and Michael.  Wooten maintained the control and dominion of Daniel and could have petitioned the court for a change in the custody and visitation arrangements if she felt Michael posed a risk to Daniel's well-being.  Under these circumstances, allowing a child visitation with a natural parent does not so "shock the conscience" as to constitute a substantive due process violation.  *DeShaney,* 489 U.S. at 197, 109 S.Ct. at 1004.

Wooten contends that the state and her son had a "special relationship" which imposed an affirmative duty on the state to provide Daniel with protection.  *See Jones v. Phyfer,* 761 F.2d 642 (11th Cir.1985); *Cornelius v. Town of Highland Lake,* 880 F.2d 348 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).[4]  In *Cornelius,* we held that "government officials may be held liable for the deprivation by a third party of a private citizen's due process rights when a special relationship is found to exist between the victim and the third party or between the victim and the government officials."  880 F.2d at 352-53.  There is no special relationship here:  Daniel was

---

[4]There is some question whether this court's holding in *Cornelius* survived the Supreme Court's decision in *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), which held that a voluntary employment relationship, standing alone, does not impose a constitutional duty on government employers to provide a reasonably safe work environment.  This panel, however, need not rely upon *Cornelius* in making its decision.

in the physical custody of his natural mother when his natural father took him; Daniel did not rely solely upon the state for his physical needs and safety; Wooten had access to the courts if she was displeased with the unsupervised visitation; Wooten could have intervened to stop the unsupervised visitation; and Wooten was able to protect Daniel because she had physical custody of Daniel. As noted earlier, the state's sole responsibility was to monitor and arrange Daniel's visitation with Michael.

The Supreme Court has noted that in certain limited circumstances the Constitution imposes upon the state affirmative duties of care and protection with respect to particular individuals. In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court recognized that the Eighth Amendment's prohibition against cruel and unusual punishment requires the state to provide adequate medical care to incarcerated prisoners. The Court reasoned that because the prisoner is unable "by reason of the deprivation of his liberty" to care for himself, it is only fair that the state be required to care for him. *Id.* at 103-104, 97 S.Ct. at 290-91 (quotations omitted). In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court extended the *Estelle* analysis holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the state to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety' from themselves and others. 457 U.S. at 314-325, 102 S.Ct. at 2457-2463. These cases, however, provide no support for Wooten in the present case.

The state did not so restrain Daniel's freedom or hold him against his will to such an extent that a "special relationship" was created. The affirmative duty to protect arises from the limitation which the state imposes on an individual's freedom to act on his own behalf. The state did not impose any limitation on Daniel's personal liberty or freedom to act. The state placed Daniel in the physical custody of his natural mother and monitored Daniel's visitation with his natural father. The state's obligation did not rise to the level of an affirmative duty to protect because the state did not restrain Daniel's liberty to the extent that it rendered him unable to care for himself. *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005-06.

Several circuits have utilized *DeShaney* to find a distinction between situations where a child is totally dependent upon the state for security needs and situations where the primary responsibility for care remains with a natural parent. *See e.g., Maldonado v. Josey,* 975 F.2d 727 (10th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993); *D.R. by L.R. v. Middle Bucks Area Vocational Tech. School,* 972 F.2d 1364 (3rd Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *J.O. v. Alton Community Unit School Dist. 11,* 909 F.2d 267 (7th Cir.1990). Each of these cases involved children who were harmed by public school teachers. The plaintiffs in these cases attempted to hold school system officials liable based upon the custodial relationship which existed between the school system and the child, especially in light of state compulsory attendance laws. The courts uniformly held that substantive due process did not

furnish the plaintiffs a basis to recover against the school systems because the state had not rendered the children totally dependent upon the state.[5]

The present case is similarly analogous to *DeShaney* and the above-referenced cases to warrant our conclusion that Wooten has no claim under substantive due process. In those cases, like here, the children remained in the physical custody of their parents who were free to take steps to protect them from harms perpetrated by other persons. The key inquiry in this case is whether the county caseworkers controlled Daniel's life to such an extent that Wooten could not reasonably be expected to protect him. The answer is that they did not. Accordingly, Wooten's complaint fails to state a claim upon which relief can be granted and should have been dismissed.

### III. CONCLUSION

We are not unsympathetic to Wooten and the tragic circumstances under which she lost her son. In applying the law, however, we cannot be guided by emotions. The facts of this case are similar to those in *DeShaney,* and it is under those principles that we hold that Wooten's complaint fails to state a violation of a constitutional right. We note that our decision does not foreclose other avenues of relief available to Wooten. We must remember that the individual truly responsible for this tragedy is Michael, not the state, for it was Michael who shot Daniel and then

---

[5]*See also Wright v. Lovin,* 32 F.3d 538 (11th Cir.1994) (a child's voluntary school attendance did not create a custodial relationship between himself and the school sufficient to give rise to a constitutional duty of protection).

killed himself.

REVERSED.