Leonard Q. ARRINGTON, Sr., Plaintiff,

v.

Joseph DICKERSON, et al., Defendants.

Civil Action No. 94–D–1593–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 31, 1996.

Will R. Kelly, Hayneville, AL, Leonard Q. Arrington, Montgomery, AL, Thomas R. Fields, III, Hayneville, AL, for plaintiff.

Thomas C. Tankersley, Montgomery, AL, Mark Englehart, Kenneth L. Thomas, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

In *Arrington v. Dickerson,* 915 F.Supp. 1503 (M.D.Ala.1995) (De Ment, J.),[1] the court granted without prejudice the Montgomery City Council defendants' motion to dismiss the First Amendment retaliation claim brought under 42 U.S.C. § 1983, and simultaneously granted the plaintiff leave to amend his complaint to plead this claim with specificity. On December 15, 1995, the plaintiff filed a motion to amend the complaint, which is now before the court. For the reasons stated herein, the court finds that said motion is due to be denied.

■ Upon further reflection of the pertinent facts and the case law, the court, *sua sponte,* also will reconsider and modify its previous ruling in *Arrington 1* in so far as the court finds that it analyzed the plaintiff's First Amendment retaliation claim under the wrong legal standard.[2] Similarly, the court further finds that it erred in dismissing the plaintiff's First Amendment retaliation claim against defendant Mark Gilmore for failure to meet the heightened pleading requirement. As a result, the court finds that its ruling in *Arrington 1* regarding the First Amendment retaliation claim against defendant Mark Gilmore in his individual capacity is due to be vacated. The court, however, finds that the dismissal of the First Amendment retaliation claim against the other members of the Montgomery City Council is due to be reaffirmed.

■ Also in *Arrington 1,* the court reserved ruling on the Montgomery City Council defendants' motion to dismiss the First Amendment retaliation claim on the basis of qualified immunity. The court ordered the plaintiff to demonstrate why qualified immunity does not shield the Montgomery City Council defendants from liability in their individual capacities. The plaintiff responded to the court's order on December 15, 1995. Because the motion to dismiss the First Amendment retaliation claim is due to be reaffirmed as to all the Montgomery City Council defendants except Mark Gilmore, the court need only decide whether Mark Gilmore is entitled to qualified immunity. For the reasons stated herein, the court finds that there was no constitutional duty clearly established at the time of defendant Mark Gilmore's alleged First Amendment retaliation; and, therefore, he is entitled to qualified immunity in his individual capacity. Moreover, if an appeal is taken and the court of appeals reverses the court's dismissal of the First Amendment claims as to the other Montgomery City Council defendants, the court likewise finds that, in the alternative, they are entitled to qualified immunity.

## PROCEDURAL HISTORY AND FINDINGS OF FACTS

Complete findings of fact are contained in *Arrington 1,* which the court herein incorporates by reference. The court need not repeat its previous findings but will instead set forth a brief history of the proceedings in this case.

The plaintiff commenced this action on December 14, 1994, against the City of Montgomery and the members of the Montgomery City Council in their official and individual capacities. The complaint names as defendants the following members of the Mont-

---

1. Hereafter, the court will refer to the December 7, 1995, memorandum opinion and order as *Arrington 1.*

2. Neither the plaintiff nor defendants have challenged the legal standard under which the court evaluated the plaintiff's First Amendment retaliation claim. In fact, both sides argued in brief the law set forth in *Arrington 1.* Nonetheless, the court has an obligation to correct any legal errors upon discovery and should not be dissuaded from doing so merely because the law employed by the court harmonizes with the parties' view of the appropriate legal standard.

gomery City Council: Joseph Dickerson; Richard Manchus; Bud Chambers; Billy M. Turner; Joe L. Reed; Mark Gilmore, Jr.; Leu W. Hammonds; Alice D. Reynolds; and Rick McBride.

In the complaint, the plaintiff asserts that the defendants' denial of his application for a retail liquor license violated his rights under the First, Fifth and Fourteenth amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983. On January 31, 1994, pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, the defendants jointly moved the court to dismiss the § 1983 constitutional claims for failure to state a claim upon which relief can be granted. In the same motion, the members of the Montgomery City Council also raised the affirmative defenses of absolute and qualified immunity.

The court dismissed the members of the Montgomery City Council in their official capacities on the basis of the Eleventh Amendment's absolute immunity. As to the substantive counts, the court found in *Arrington 1* that absent a protected property or liberty interest in the issuance of a retail liquor license, the plaintiff did not state a substantive or procedural due process claim under the Fourteenth Amendment. The plaintiff's Fourteenth Amendment equal protection claim also failed because the plaintiff did not allege facts showing that he was similarly situated to other liquor license applicants, yet treated more harshly by the defendants. In addition, the court dismissed the Fifth Amendment claim, because the due process clause of the Fifth Amendment does not apply to state or local governmental actors.

The Montgomery City Council defendants also asserted, and the court found, that the heightened pleading requirement set forth in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), applied to 42 U.S.C. § 1983 claims where individual government actors assert the affirmative defense of qualified immunity. Finding that the plaintiff had failed to plead with specificity his First Amendment retaliation claim against the Montgomery City Council defendants, the court granted the plaintiff leave to file an amended complaint as to this claim. The court also reserved ruling on the qualified immunity issue. As to the City of Montgomery, also a defendant in this action, the court found that the plaintiff had pleaded a First Amendment retaliation claim and, thus, denied the City of Montgomery's motion to dismiss said claim. In sum, the sole remaining count in this action is the plaintiff's First Amendment retaliation claim against the City of Montgomery and the Montgomery City Council members in their individual capacities.

As a basis for his First Amendment retaliation claim, the plaintiff asserts that the defendants denied his application for a retail liquor license on January 4, 1994, because he had previously written a letter and telephoned a "city official" complaining that the city overcharged one of his clients for abatement of weeds on property located in defendant Mark Gilmore's district. The plaintiff's communications were then forwarded to defendant Mark Gilmore and, according to a city clerk, caused him to persuade defendants Reed, Dickerson, Baker and Hammonds to "block" the approval of the license.

## ANALYSIS

### I. Motion to Amend the Complaint

■ Initially, the court will address the plaintiff's motion to amend the complaint. On December 7, 1995, the court granted the plaintiff leave to amend the complaint to allege more specific facts in support of his § 1983 claim alleging a First Amendment violation. Instead, the plaintiff filed a motion to amend the complaint to add four new causes of action for alleged retaliatory and other alleged illegal conduct that occurred after the filing of the plaintiff's complaint.[3]

---

**3.** The "proposed amended complaint," which is attached to the motion to amend, sets forth four new counts. Count I asserts a First Amendment retaliation claim separate from the one alleged in the original complaint. Specifically, the plaintiff contends that he again applied for a retail liquor license and that the Montgomery City Council defendants denied his application on May 4, 1995. According to the plaintiff, the Montgomery City Council defendants stated that the rea-

In addition to naming the defendants in the original complaint, the plaintiff also seeks to add John Baker as a defendant to the four new counts.[4] The plaintiff has named John Baker individually and in his official capacity as a member of the Montgomery City Council.

Once the time period for amending a pleading as of right has expired, Rule 15(a) of the *Federal Rules of Civil Procedure*, permits amendment "... only by leave of court." Rule 15(a), however, limits the court's discretion by mandating that "... leave shall be freely given when justice so requires." *See Halliburton & Assoc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir.1985). A substantial reason must exist to deny a motion to amend. *Id.; Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir.1993) (holding that "a justifying reason must be apparent for denial of a motion to amend") (citation omitted). Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The court finds that undue delay by the plaintiff in filing his motion to amend the complaint and the resulting prejudice to the defendants justify a denial of the motion. The plaintiff had more than ample opportunity to amend his complaint to add the new counts and John Baker as a defendant. The events giving rise to these counts occurred in May 1995 when the Montgomery City Council defendants denied the plaintiff's second application for a retail liquor license. Yet, the plaintiff chose not to seek leave to amend his complaint until nearly seven months later and offered no reason for his delay. The court cannot find any justification for allowing the plaintiff to wait until the final stages of this litigation to amend his complaint,

particularly since the pretrial hearing and trial are scheduled for January 30, 1996, and March 4, 1996, respectively.

The court further finds that the defendants will suffer prejudice if the court allows the amendments, because the defendants would not be able to adequately prepare and file any motions regarding the added causes of action. The only way to cure the prejudice would be to continue the trial of this case, which would unnecessarily delay the final disposition of the action and the rights of the parties. Thus, the court finds that substantial reasons warrant denial of the plaintiff's motion. Accordingly, the plaintiff's motion to amend the complaint is due to be denied, without prejudice to the plaintiff's rights to file a separate action. In so ruling, the court expresses no opinion on the merits of the counts sought to be added.

## II. First Amendment Claim

The issues before the court are: (1) whether the plaintiff has stated a First Amendment retaliation claim, as enforced by 42 U.S.C. § 1983, against the Montgomery City Council members in their individual capacities; and, (2) if so, whether the members of the Montgomery City Council are entitled to qualified immunity. Resolution of these two issues are intertwined, as "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Wooten v. Campbell*, 49 F.3d 696, 699 n. 3 (11th Cir.1995) (quoting *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)). Pursuant to the Eleventh Circuit's suggestion in *Wooten*, the court first will address whether the plaintiff has pleaded a claim under the First Amendment. *Id.* (stating that the threshold issue for the court is whether un-

---

son for denial was because the plaintiff had filed this action. The facts that form the basis of the remaining counts also arise from the May 4, 1995, denial of the plaintiff's application for a retail liquor license. These counts set forth causes of action for "Conspiracy to Interfere with a Legitimate Business" (Count II), "Con-

spiracy" (Count III) and "Neglect to Prevent" (Count IV).

4. The plaintiff has not asked to add John Baker as a defendant to the counts asserted in the original complaint.

der Rule 12(b)(6), "a plaintiff establishes the violation of a constitutional right"). *Id.*

### A. Stating a Claim for Relief under the First Amendment

■ In § 1983 actions where government officials assert qualified immunity, as here, a plaintiff must plead his or her claim *with specificity. See Arrington v. Dickerson,* 915 F.Supp. 1503 (M.D.Ala.1995) (De Ment, J.); *see also Ross v. State of Alabama,* 893 F.Supp. 1545, 1553 (M.D.Ala.1995) (De Ment, J.). Thus, to state a claim for relief, § 1983 litigants have the burden of alleging two elements with specificity: (1) that a person "acting under color of law" committed, by act or omission, the conduct of which the plaintiff complains; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987) (citation omitted); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). The court now examines the plaintiff's complaint in light of these requirements and accepts the allegations of the complaint as true.[5]

■ In *Arrington 1,* the court found that the plaintiff had satisfactorily pleaded that the members of the Montgomery City Council acted under color of state law.[6] The court, thus, turns to whether the plaintiff has alleged facts to support a claim for a violation of the First Amendment.[7] The plaintiff asserts that the defendants denied his application for a liquor license in retaliation for his First Amendment free speech right to voice his concerns to a city official about what he believed was an "excessive" fee charged by the city for abatement of weeds.

■ First, the court must determine the legal framework by which to evaluate the plaintiff's First Amendment retaliation claim. The defendants argue, in part, that the plaintiff has failed to allege sufficient facts demonstrating that the content, form and context of the speech constitute a matter of "public concern." In *Arrington 1,* the court rejected the defendants' argument and found that, as a matter of law, the communications constituted matters of public concern. The requirement that speech relate to a matter of public concern is the first-step of the legal analysis courts use to evaluate a public employee's claim that a government employer fired him or her in retaliation for the exercise of a First Amendment right. *Beckwith v. City of Daytona Beach Shores, Fla.,* 58 F.3d 1554, 1563 (11th Cir.1995). In *Beckwith,* the Eleventh Circuit held that courts should analyze First Amendment *retaliatory discharge claims* under a four-part balancing test which examines:

> (1) whether the employee's speech involves a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service, (3) whether the speech played a substantial part in the government's challenged employment decision, and (4) whether the government would have made the same employment decision in the absence of the protected conduct.

*Id.* at 1563–64 (citation omitted). This analysis combines and harmonizes the holdings from the following three Supreme Court de-

---

**5.** Here, the Montgomery City Council defendants have moved for dismissal of the plaintiff's § 1983 First Amendment retaliation claim. A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See e.g., Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991); *see also Brower v. County of*

*Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

**6.** Hereafter, all references to the "defendants" refer to the members of the Montgomery City Council and not to the City of Montgomery.

**7.** The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for redress of grievances."

cisions: *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); and *Mount Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *See also Hatcher v. Board of Public Educ. and Orphanage for Bibb County,* 809 F.2d 1546, 1557 n. 19 (11th Cir.1995).

After an exhaustive review of the applicable case law, the court has reconsidered its previous position in *Arrington 1* and finds for the following reasons that the *Beckwith* test does not extend to cases where a plaintiff, as a private citizen, is denied a liquor license by a governmental agency.[8] The purpose of the "public concern" requirement—"to prevent the federal courts from becoming 'a round table for employee complaints over internal office affairs' "[9]—obviously is inapplicable in the plaintiff's case. Moreover, the Supreme Court has distinguished between the government's control over a private citizen's speech and the speech of a public employee. This distinction is evidenced by the Supreme Court's statement in *Pickering* that the state's interests as an employer in regulating the speech of its employees differs "significantly from those it possesses in connection with regulation of the speech of the citizenry in general." 391 U.S. at 568, 88 S.Ct. at 1734.

■ Furthermore, Justice Scalia, who wrote the dissent in *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), noted that the majority in *Pickering* "recognized that the government's power as an employer to make hiring and firing decisions on the basis of what its employees and prospective employees say has a much greater scope than its power to regulate expression by the general public." *Id.* at 394, 107 S.Ct. at 2902 (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734). In sum, the court finds that the First Amendment *does not* allow a public official to infringe upon a private individual's speech, even if the speech

concerns a purely private matter, thus rendering the *Beckwith* balancing test inapplicable in the instant case.

In fact, outside of the public employer-employee context, the only cases the court finds that applied a balancing test similar to the one set forth in *Beckwith* involved licensees and independent contractors who had lost governmental benefits because of an exercise of First Amendment rights. *See Smith v. Cleburne County Hosp.,* 870 F.2d 1375 (8th Cir.), *cert. denied,* 493 U.S. 847, 110 S.Ct. 142, 107 L.Ed.2d 100 (1989) (physician who contracted to work for a public hospital lost staff privileges); *Copsey v. Swearingen,* 36 F.3d 1336 (5th Cir.1994) (individual's state license to operate a vending stand in a public building was terminated).

In the latter two cases, the courts analogized the status of an independent contractor and licensee to that of a government employee. For example, in *Copsey,* the Fifth Circuit analyzed the First Amendment retaliation claim of a blind participant in a state-run vending licensing program. The program gave "preferential treatment to blind persons who desired to operate concession stands in public buildings." *Id.* at 1338. The plaintiff asserted that the termination of his vending license was in retaliation for his free speech right to criticize the program through a letter to the National Federal of the Blind, on television and in discussions with state representatives. *Id.* at 1340–41 & 1343.

The district court applied the public employer-employee test enunciated in *Pickering* and *Connick.* On appeal, the plaintiff argued that the district court erred and instead should have employed "a more First Amendment friendly standard." *Id.* at 1344. The Fifth Circuit found that while differences did exist between licensor-licensee and employer-employee relationships, "on balance ... [the plaintiff] was more like a public employee than an ordinary citizen, and therefore ... *Pickering* and *Connick* ha[d] relevance to

---

**8.** While a vast expanse of case law exists regarding First Amendment retaliation claims in the context of governmental employer-employee relationships, very few courts have had the opportunity to examine claims by private citizens similar to the one presented here.

**9.** *Kurtz v. Vickrey,* 855 F.2d 723, 727 (11th Cir. 1988) (quoting *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691).

this situation." *Id.* (brackets supplied). For example, the Fifth Circuit stated that the restrictions imposed by the licensor, such as mandatory state training and suspension or termination of a license for violating the rules, resembled an "employer-employee type relationship." *Id.* Additionally, "[t]he actual vending space [was] owned by the state," and "the state furnishe[d] vendors with such substantial equipment as refrigerators, microwave ovens, and cash registers." *Id.* (brackets supplied).

The analogy set forth in *Copsey* fails in the present case, however, because the plaintiff never possessed in the first place a governmental benefit, i.e., a license to sell liquor, which subsequently was taken away. Accordingly, the court concludes that the plaintiff need not face the steeper hurdle that a public employee has of proving a First Amendment retaliatory claim. The more troubling question is, however, what law should the court apply in this action.

Neither side has cited, nor has the court found, any binding precedent regarding a claim by a private citizen, as opposed to a public employee, for an alleged retaliatory denial of a liquor license by government actors. Other circuits, however, have applied varying legal tests to similar claims asserted by private individuals who where denied zoning permits. For example, in *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir.1994), the Second Circuit applied the Supreme Court's analysis in *Mount Healthy, supra* at 1523, to a retaliation claim touching on First Amendment concerns. Residential landowners brought suit against the Village of Prawling, the building inspector, and various local groups that participated in zoning decisions together with their individual members.

The complaint alleged that the defendants issued unlawful zoning decisions and failed to enforce the zoning laws for industrial-owned property adjacent to the plaintiffs', "all in a series of purposeful, retaliatory and conspi-

ratorial actions designed to deprive [the plaintiffs] of their constitutional rights to substantive and procedural due process, equal protection, and free speech." *Id.* at 189. The district court granted the defendants' motion to dismiss the complaint.

On appeal, the Second Circuit affirmed the dismissal of the due process and equal protection claims, but reversed the dismissal of the retaliatory free speech claim. To state a First Amendment retaliation claim under § 1983, the Second Circuit held that a plaintiff first must demonstrate that his or her " 'conduct was protected by the first amendment.' " *Id.* at 194 (citation omitted). Second, the plaintiff must show that the "defendants' conduct was motivated by or substantially caused by his [or her] exercise of free speech." *Id.* (citations omitted) (brackets supplied). Applying this framework, the Second Circuit found that the plaintiffs' actions, which included attending public meetings and voicing concerns to a planning board about alleged zoning violations, were protected by the First Amendment. *Id.* at 195 ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment.") (citations omitted).

The Second Circuit then analyzed whether the plaintiffs had pleaded retaliatory conduct and the "requisite nexus" between the First Amendment activity and retaliatory conduct. *Id.* The Second Circuit found that based upon the specific allegations detailing the defendants' conduct between 1981 and 1990, one could infer that the "[d]efendants' actions were motivated by or substantially caused by the [plaintiffs'] exercise of their First Amendment rights." *Id.*

In contrast to the Second Circuit's approach in *Gagliardi*, the Third Circuit decided a private citizen's First Amendment retaliation claim under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[10]

**10.** In *McDonnell Douglas,* the Supreme Court established a three-part, burden-shifting analysis by which a plaintiff can prove intentional discrimination in disparate treatment cases predicated upon Title VII of the Civil Rights Act. First, the plaintiff must make out a prima facie

case by showing: (i) that he or she belongs to a protected class; (ii) that he or she applied for a position and was qualified for the job for which the employer was seeking applicants; (iii) that he or she was rejected; and (iv) that after the rejection, the position remained open and the employ-

*See Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 41 (1st Cir.1992). In *Custodio,* one of the plaintiffs was "an outspoken member of an opposition political party and a critic of the government's environmental policies."[11] *Id.* at 41. The plaintiffs filed a § 1983 action and alleged, in part, that the defendants retaliated against Dr. Vivas' First Amendment right to express political views by denying their petitions for three land use permits. The district court granted the defendants' motion for summary judgment on all counts. The plaintiffs appealed.

The Third Circuit applied the *McDonnell Douglas* paradigm to each of the plaintiffs' petitions for a permit. As to the residential site permit, the Third Circuit found that the plaintiffs had stated a prima facie case: Dr. Vivas' expressions about his political views and party affiliation were protected by the First Amendment; the permit application, as modified, indicated that the plaintiffs were "'qualified'" to obtain the permit; and the plaintiffs were denied the permit despite their allegation that the defendants routinely had granted permits for similar requests from adjacent landowners. *Id.* The Third Circuit stressed that the "latter assertion, supported by some factual allusions, is key because it indicates the possibility of an illegal motive—that something about ... [Dr.] Vivas, perhaps his political views, caused him to be denied what otherwise would routinely have been granted." *Id.* (brackets supplied).

The defendants then rebutted the plaintiffs' prima facie case by asserting that they denied the permit "for lack of sewer facilities in the area." *Id.* The Third Circuit held that "an arguable question of pretext" existed based, in part, upon the plaintiffs' evidence "that the sewer issue was never raised in the initial stages of consideration." *Id.* Consequently, the Third Circuit vacated the district court's entry of summary judgment as to this claim.

The Third Circuit, however, held that the district court properly granted summary judgment as to the First Amendment retaliation claims pertaining to the denial of the plaintiffs' petitions for a hazardous waste permit and a domestic waste permit. The Third Circuit primarily based its decision on the lack of evidence under the fourth element of the *McDonnell Douglas* prima facie case. That is, in contrast to the residential site permit, the plaintiff had failed to proffer evidence that the defendants had granted "similar permits ... to similarly qualified applicants" or other evidence indicating a retaliatory motive. *Id.* at 42. *See also, id.* at 43. The Third Circuit emphasized that neither "mere denial of a permit" nor "broad conclusory allegations of wrongdoing" in the complaint are sufficient to suggest a retaliation claim under the First Amendment: "Only when accompanied by other facts, such as that others with no different qualifications were granted a permit, is the allegation sufficiently suggestive of retaliation for First Amendment activity." *Id.* at 42.

Here, the court need not necessarily choose between either the test enunciated in the First Circuit or the one set forth in the Third Circuit. While both tests differ and originate from different courts, the essential elements of proof are the same in each. That is, a plaintiff must show the following: (1) that his or speech is protected by the First Amendment; (2) that the defendants took an adverse action against the plaintiff; and (3) that the adverse action was prompted or caused by the plaintiff's exercise of his or First Amendment rights. Hence, the court will proceed to analyze the plaintiff's claim in light of this framework.

The determination of what constitutes "protected speech" under the First Amendment is a question of law. *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7

er continued to seek applicants with similar qualifications. 411 U.S. at 792, 93 S.Ct. at 1817. The employer then may rebut the employee's prima facie case by showing a legitimate, nondiscriminatory reason for the employee's rejection. *Id.* at 802, 93 S.Ct. at 1824. If the employer makes such a showing, the employee may show that the alleged nondiscriminatory reason

was a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

11. The plaintiffs in this action were: Nestor Colon–Medina & Sucesores, Inc.; Dr. Maximo Cerame Vivas; his wife Maria J. Colon; and their partnership. 964 F.2d at 34. Dr. Maximo Cerame Vivas is the "outspoken" plaintiff.

("[T]he inquiry into the protected status of speech is one of law, not fact."). All speech is not afforded First Amendment protection, such as "fighting words," *Cohen v. California*, 403 U.S. 15, 19, 91 S.Ct. 1780, ——, 29 L.Ed.2d 284 (1971), and speech that presents a "clear and present danger" to society. *See generally Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam). The court finds that here the plaintiff's conversation with and letter to a city official, wherein he complains of what he believes is an excessive charge for the city's services, clearly is protected under the First Amendment. It is well established that private citizens have a First Amendment right to criticize government policies. *Yates v. United States*, 354 U.S. 298, 314, 77 S.Ct. 1064, 1075, 1 L.Ed.2d 1356 (1957); *see also Barenblatt v. United States*, 360 U.S. 109, 145–46, 79 S.Ct. 1081, 1103, 3 L.Ed.2d 1115 (1959) (Black, J., dissenting) (stating that "the only constitutional way our Government can preserve itself is to leave its people the fullest possible freedom to praise, criticize or discuss, as they see fit, all governmental policies and to suggest, if they desire, that even its most fundamental postulates are bad and should be changed").

Furthermore, the plaintiff has pleaded that he was denied a liquor license, thus, satisfying the "adverse action" requirement. The difficulty that the plaintiff faces comes with the third requirement. That is, with the exception of Gilmore, the court finds that the plaintiff has not fulfilled the heightened pleading requirement of alleging causation between the adverse action and the plaintiff's exercise of his First Amendment rights.[12] In other words, the plaintiff has not alleged specific facts which establish that the Montgomery City Council defendants' conduct was prompted by the plaintiff's exercise and pursuit of rights protected by the First Amendment.

The plaintiff merely alleges that Gilmore asked four of the Montgomery City Council defendants—Reed, Dickerson, Baker and Hammonds—to vote against granting the plaintiff's application for a retail liquor license. The remaining members of the Montgomery City Council—Manchus, Chambers, Turner, McBride and Reynolds—are not even mentioned in the body of the complaint. As to all defendants except Gilmore, the court cannot ascertain from the complaint how any of them are involved in the scheme of liability. In other words, the plaintiff has failed to "connect" a First Amendment violation to these defendants. *Caldwell v. City of Elwood*, 959 F.2d 670, 672 (7th Cir.1992) (quoting *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir.1992) (holding that "[a] civil rights complaint must outline a violation of the constitution or a federal statute 'and connect the violation to the named defendants' ").)

In order to bridge the gap between the protected speech and the denial of the plaintiff's retail liquor license, the court must assume facts not set forth in the complaint. As stated in *Arrington 1*, but worth repeating, the court must *assume* that Gilmore told the other defendants about the plaintiff's letter and telephone call and that they voted against the plaintiff's application for a liquor license based upon the protected speech. The facts fail even to allege that any defendant, other than Gilmore, was aware of the communications when voting on the plaintiff's application for a liquor license.

As to Gilmore, however, the court finds that the plaintiff has specifically pleaded a "causal connection." The plaintiff has alleged facts supporting his allegation that Gilmore retaliated against him because of the letter and telephone call. That is, the plaintiff has pleaded that the city clerk told him that because of the plaintiff's communications with the city official, Gilmore persuaded defendants Reed, Dickerson, Baker and Hammonds to block the approval of the license. If the plaintiff produces evidence of the latter, such as the testimony of the city clerk, and if the jury finds this testimony to be credible, then clearly the plaintiff would be entitled to relief. The court finds that the

---

12. In his amended complaint, the plaintiff did not add any facts in support of his First Amendment retaliation claim. In *Arrington 1*, the court forewarned that if the plaintiff failed to provide more than conclusory allegations, the court would be compelled to grant the defendants' 12(b)(6) motion to dismiss for failure to state a violation of the First Amendment.

pleading regarding the city clerk is more than a broad, conclusory allegation of wrongdoing. Accordingly, the court finds that as to all defendants except Gilmore, the complaint fails to state a claim for relief under the First Amendment.

### B. Qualified Immunity

■ Defeating a motion to dismiss for failure to state a claim does not ensure the plaintiff that his claim will survive a motion to dismiss based upon the affirmative defense of qualified immunity. A § 1983 litigant must overcome the onerous burden of defeating the qualified immunity defense in order to recover monetary damages from the pocket of a government official. In fact, based upon the case law in this circuit, a more appropriate name for this defense would be "unqualified immunity."

■ The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. A government official first must demonstrate that " 'he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred.' " *Rich,* 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)). "Once the defendant public official satisfies his [or her] burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional law.' " *Rich,* 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)).

■ Whether applicable law was clearly established at the time of the challenged action is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and, in this case, the Supreme Court of Alabama. *D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson,* 939 F.2d at 1498 and n. 32. The relevant inquiry is "fact specific," *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994) (De Ment, J.),[13] and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter,* 28 F.3d at 1150. As emphasized in *Lassiter,* "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violated federal law in the circumstances." *Lassiter,* 28 F.3d at 1150 (italics supplied); *see also Anderson*

---

**13.** In *Rodgers,* the Eleventh Circuit reversed this court's order denying the defendants qualified immunity on a motion for summary judgment. The Eleventh Circuit's inquiry in that case demonstrates the factual depth required for determining whether the law was clearly established:
The question in this case is not whether, in general, involuntarily committed patients have a legally cognizable interest under the Fourteenth Amendment to safe conditions. They do. Instead, the question in this case, as in all qualified immunity cases, is fact specific: in May 1991, was it clearly established in this circuit that it was unconstitutional for a mental institution to fail to supervise a patient for fifteen minutes in the smoking room when she was on close watch status for a health problem, when the institution had a history of some "sexual contact" involving patients other than plaintiff but no history of rape for the past twelve years, where a previous patient who was to be similarly monitored disappeared, apparently escaped through a bathroom window, and fell to her death on a ledge below, and where the plaintiff had never before complained of unwanted sexual contact from either the patient accused, any other patient, or any member of the staff? The answer is "NO."
*Id.* at 311.

*v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right").

While the plaintiff correctly asserts that he has a First Amendment right not to be retaliated against, the qualified immunity inquiry does not stop at such an abstract level. In arguing that the law is clearly established in the Eleventh Circuit, the plaintiff cites *Wildberger v. Bracknell,* 869 F.2d 1467 (11th Cir.1989). In *Wildberger,* the Eleventh Circuit held that the district court erred in granting summary judgment as to the prisoner's First Amendment retaliation claim brought under 42 U.S.C. § 1983. The Eleventh Circuit held that if as alleged by the plaintiff, the facts revealed that the defendants placed the prisoner in segregation because he filed a grievance concerning the conditions of his imprisonment, the defendants' conduct would constitute retaliation in violation of the prisoner's First Amendment right to file an administrative grievance. *Id.* at 1467–68.

Although *Wildberger* considered a similar legal issue, the court finds that those facts are not similar enough to the facts in the instant case so as to clearly establish the law. In specific terms, the court finds that on January 4, 1994, a reasonable official serving on a city council would not have known that asking other city council members to vote against a private citizen's application for a retail liquor license rises to a constitutional violation where the request was made because the private citizen previously wrote a letter and called a city official complaining of a charge assessed against property owned by a client of the private citizen and located in the city council member's district.

The court simply has been unable to find any controlling cases with facts similar to those in the instant action. For instance, the line of cases involving retaliation against employees for their exercise of protected speech

are not sufficiently similar, because the courts apply a different legal standard to the speech of public employees than to the speech of private citizens, as discussed *supra.* Because neither the Eleventh Circuit, the Supreme Court of the United States, nor the Supreme Court of Alabama have considered facts and circumstances which are *closely* analogous to those in the case at bar, the court finds that it is not clearly established that Gilmore's conduct constituted a First Amendment violation. Accordingly, the court finds that Gilmore is entitled to qualified immunity as to the § 1983 claim asserted against him in his individual capacity.[14]

## CONCLUSION

For the foregoing reasons, it is CONSIDERED and ORDERED that the plaintiff's motion to amend the complaint be and the same is hereby DENIED.

For the reasons stated herein, the court, *sua sponte,* VACATES its previous finding in *Arrington v. Dickerson,* 915 F.Supp. 1503 (M.D.Ala.1995) (De Ment, J.), wherein the court found that the complaint failed to state a First Amendment retaliation claim against defendant Mark Gilmore in his individual capacity. Accordingly, it is CONSIDERED and ORDERED that defendant Mark Gilmore's motion to dismiss the First Amendment retaliation claim for failure to state a claim be and the same is hereby DENIED but that defendant Mark Gilmore's motion to dismiss the First Amendment retaliation claim on the basis of qualified immunity be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that the court's order in *Arrington v. Dickerson,* 915 F.Supp. 1503 (M.D.Ala. 1995) (De Ment, J.), granting the motion to dismiss filed by the remaining Montgomery City Council defendants—Joseph Dickerson, Richard Manchus, Bud Chambers, Billy M. Turner, Joe L. Reed, Jr., Leu W. Hammonds, Alice D. Reynolds and Rick McBride—on the ground that the plaintiff

---

14. For the same reasons, the court also finds that the other members of the Montgomery City Council are entitled to qualified immunity, in the event, that the Eleventh Circuit were to reverse

this court's order granting their Rule 12(b)(6) motion for failure to state a First Amendment claim.

failed to state a First Amendment retaliation claim against each of them be and the same is hereby REAFFIRMED because of the lack of causal connection between the protected speech and the alleged retaliation. In the alternative, it is CONSIDERED and ORDERED that the aforementioned Montgomery City Council defendants' motion to dismiss on the basis of qualified immunity be and the same is hereby GRANTED.

This action will proceed on the plaintiff's First Amendment retaliation claim against the City of Montgomery.