Dawn DEVAUGHN, Plaintiff,

v.

The CITY OF CLANTON, ALABAMA, a Municipal Corporation, Billy Joe Driver, Individually and in his official capacity an Mayor of the City of Clanton, Alabama, James Henderson, Individually and in his official capacity as Chief of the Clanton, Alabama Police Department, Defendants.

No. Civ. 96–D–1212–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 22, 1997.

Charles H. Morris, III, Selma, AL, for Plaintiff.

James W. Porter, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants' Motion for Summary Judgement, filed July 23, 1997. Plaintiff Dawn DeVaughn filed a brief in opposition to Defendants' Motion on August 11, 1997. Defendants responded to Plaintiff's brief in opposition on August 19, 1997. Also pending before the court are Defendants' Motion to Strike the Affidavit of Dawn DeVaughn and Motion to Strike the Affidavit of Richard Davis, both dated August 19, 1997. After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that, for the reasons set forth below, Defendants' Motion for Summary Judgment on Claims I through V of Plaintiff's complaint is due to be granted. The court further finds that Claim VI is due to be dismissed without prejudice. Additionally, the court finds that Defendants' Motions to Strike the Affidavits of Richard Davis and Dawn DeVaughn are due to be granted, as these affidavits fail to conform with the requirements of Fed.R.Civil P. 56(e).[1] Specifically, the court finds that these affidavits contain hearsay and therefore fail Rule 56(e)'s requirement that affidavits be based on personal knowledge.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1343, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that

---

1. Rule 56(e) in pertinent part states that affidavits in support of or in opposition to a motion for summary judgment "... shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed .R.Civ.P. 56(e).

there is a genuine issue for trial.'" *Id.* at 324; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587. An action is void of a material issue for trial "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.; see also Anderson,* 477 U.S. at 249.

## STATEMENT OF FACTS

Plaintiff Dawn DeVaughn was employed as a secretary to Defendant Billy Joe Driver ("Driver"), who was serving as Mayor of the City of Clanton, Alabama, from October 1989 to April 1995. Defendant James Henderson ("Henderson") is the appointed Police Chief of the City of Clanton, Alabama, and was serving as the Police Chief of the City of Clanton at all times material to this action. The City of Clanton, Alabama, a municipal corporation ("City"), is also a Defendant to this action.

Plaintiff claims that at the time of her employment as secretary to Driver, she was subject to unwelcome and unsolicited sexual advances from him, including kisses and sexually aggressive comments.

On January 13, 1995, Plaintiff was assaulted by an unknown person in the "old auditorium," a part of Clanton City Hall used for storage purposes. Plaintiff contends that she had gone to this area of the building to store an old file and to get paper for the copy machine. Plaintiff was found by Driver and other City Hall employees in an unconscious condition with lumber piled on top of her.

The State of Alabama Department of Corrections ("ADC") maintains a part-time office at City Hall. The ADC requires prisoners on parole to visit the office on occasion. Plaintiff contends that the City of Clanton was on notice that the area where she was attacked was not secure and that vagrants and "dere-licts" frequented this area. Compl. ¶ 8. She contends that the City was grossly negligent in failing to secure this area and was deliberately indifferent in failing to protect her and other female employees from possible assault. Compl. ¶ 8.

Plaintiff contends that, as a result of the assault, she suffered injuries to her head and neck, severe depression, sleep disturbances, and other physical and emotional problems. She has been on medical leave of absence from her employment and remains under the care of physicians and other medical personnel.

Plaintiff recovered the value of items she claims were broken or stolen during the attack from both her Homeowner's Insurance Policy and the City. As liaison between the City and the third party administrator of the City's worker's compensation program, DeVaughn handled her own worker's compensation claim against the City. Defendants contend that Plaintiff defrauded the City by reporting an inflated weekly wage to the third party administrator for her worker's compensation benefits, as well as distributing to herself a regular pay check, in the amount of 100% of her pay, for the period in which she was also collecting worker's compensation and working reduced hours.

The Alabama Bureau of Investigations ("ABI") was called in by Defendant Henderson to investigate the assault on Plaintiff. ABI later switched its investigation from the assault on Plaintiff to possible insurance fraud by Plaintiff. As a result of this investigation, Plaintiff was indicted by a Chilton County Grand Jury on August 24, 1995, on charges of possession of a forged instrument and three counts of theft by deception. She was arrested by a deputy sheriff of Chilton County on August 28, 1995. These criminal charges against Plaintiff came to trial in the Circuit court of Chilton County on May 28, 1996, and resulted in a jury verdict of not guilty on all charges.

Plaintiff's Amended Complaint, filed February 14, 1997, alleges that Defendants, acting under color of law or official policy, de-

prived Plaintiff of her Constitutional rights.[2]

Claim One contends that Driver violated Plaintiff's rights to equal protection of the laws, namely her right to be free from unlawful sexual discrimination and sexual harassment in public employment. Compl. ¶ 26.

Claim Two contends that Defendants violated Plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution for its failure to secure the storage area where Plaintiff was assaulted. Compl. ¶ 31–33. Plaintiff contends that this claim arises out of a "special relationship" between herself and the City. Compl. ¶ 32.

Claim Three alleges that Defendants Henderson and/or Driver violated her right under the Fourth Amendment to the United States Constitution to be free from illegal arrest. She contends that Defendants gave the ABI misleading or incomplete information which resulted in Plaintiff being indicted by a Chilton County Grand Jury and arrested on the indictment charging her with possession of a forged instrument and three counts of theft by deception. Compl. ¶ 36.

Claim Four contends that Defendants violated Plaintiff's right to be free from malicious prosecution by providing misleading or incomplete information to the ABI. She claims that this information was provided in retaliation for her filing a claim for damages against Defendants and Detective Ray Mann. Compl. ¶ 41.

Claim Five contends that Defendants deprived Plaintiff of the federal right to be free from bad faith prosecution.

Claim Six contends that Henderson is liable for defamation and/or slander per se for making defamatory remarks about Plaintiff to Allen Randall Headley, stating that she had staged the assault. Plaintiff contends that these remarks were widely circulated throughout the Clanton community. Compl. ¶ 48.

On July 23, 1997, Defendants filed a Motion for Summary Judgment on all of Plaintiff's claims.

## DISCUSSION

Plaintiff brings Claims One through Five of her Complaint under 42 U.S.C. § 1983, alleging that her federal and constitutional rights were violated.

42 U.S.C. § 1983 creates a mechanism for recovering monetary damages from and securing injunctive relief against governmental actors and entities whose actions under color of state or local law deprive a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes.[3] Plaintiffs may recover from municipalities and other local governmental entities under § 1983. *Collins v. City of Harker Heights*, 503 U.S. 115, 119, 112 S.Ct. 1061, 117 L.Ed.2d 261 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

To prevail under § 1983, a plaintiff must show that the defendant, under color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States. Section 1983 itself creates no substantive rights; rather, it provides a remedy for deprivation of federal rights established elsewhere. *See Barfield*, 883 F.2d at 934. Thus, the court must first determine whether Plaintiff has asserted a cognizable claim under § 1983. *See Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir.1994).

I. *Claim One: Sexual Harassment in violation of § 1983*

Plaintiff alleges that Defendant Driver violated her equal protection rights under the

---

2. Plaintiff's February 14, 1997 complaint included seven claims after the court granted Plaintiff's February 14, 1997 motion to add Claim Seven to her complaint filed that same date. The court dismissed this claim from Plaintiff's complaint on April 29, 1997. Order, dated April 29, 1997, granting Defendants' Motion to Dismiss Claim Seven of Plaintiff's Complaint.

3. The section states, in relevant part:

Any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..." 42 U.S.C. § 1983.

Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, by violating her right to be free from unlawful sex discrimination and sexual harassment in public employment. The Eleventh Circuit has recognized this claim for sexual harassment. *Cross v. State of Alabama,* 49 F.3d 1490, 1507 (11th Cir.1995) (citing *Davis v. Passman,* 442 U.S. 228, 235, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)).

■ A § 1983 claim for sexual harassment must contain the same elements as a claim of sexual harassment under section 703 of Title VII, 42 U.S.C. § 2000e–2. *Cross,* 49 F.3d at 1508 (citing *Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n. 16 (11th Cir.1982)). Courts recognize two types of sexual harassment claims: quid pro quo and hostile work environment. *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.1989) (citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); *Henson v. City of Dundee,* 682 F.2d 897, 908 n. 18, 910 (11th Cir. 1982). Plaintiff's claim of sexual harassment in violation of her right to Equal Protection most resembles a hostile environment theory of sexual harassment.

■ Discriminatory conduct results in a hostile work environment when it is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To prevail on her hostile work environment claim, Plaintiff must establish that: (1) she belongs to a protected class; (2) she was subject to unwelcome sexual harassment; (3)

the harassment was based on her sex; and (4) the harassment affected a term, condition or privilege of employment. *Henson,* 682 F.2d at 903–05 (11th Cir.1982).

■ In determining whether Plaintiff has established a prima facie case of sexual harassment, courts must look to the totality of the circumstances, including the severity, frequency, effect, and nature of the discriminatory conduct. *Harris,* 510 U.S. at 23. While a " 'mere utterance of an ... epithet which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment" to implicate this cause of action, "the environment does not have to be so severe as to cause a 'nervous breakdown' or 'seriously affect employee's' psychological well-being ." *Id.* at 23 (citations omitted).

The court finds that Plaintiff has failed to establish a prima facie claim for sexual harassment. Plaintiff's complaint contains several allegations of sexually harassing behavior on the part of Driver. These include kissing, straddling Plaintiff in a sexually suggestive manner, bringing his groin area into contact with her buttocks while she was bending forward, and making sexually suggestive comments. Compl. ¶ 27. These allegations certainly establish an offensive, hostile environment based on Plaintiff's gender. Most of these alleged acts, however, are excluded from Plaintiff's sexual harassment claim, as she specifically limits her sexual harassment claim to "those acts occurring within two years prior to August 1, 1996." Complaint § 28. Actions occurring prior to August 1, 1994, are time barred for purposes of a sexual harassment claim.[4]

---

4. The court assumes that Plaintiff has limited her claim to those actions occurring prior to August 1, 1994, because all other claims would be barred by the limitations period. Since § 1983 does not contain a statute of limitations, the court must look to state law for the appropriate limitations period; in this case, Alabama. *Rubin v. O'Koren,* 644 F.2d 1023, 1024 (5th Cir.1981) (citing *Ehlers v. City of Decatur,* 614 F.2d 54, 55 (5th Cir.1980)); *Sewell v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers,* 445 F.2d 545, 548 (5th Cir.1971), *cert. denied,* 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972). For the purpose of selecting the proper state limitations period, a § 1983 claim should be characterized as an action for personal injuries. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). A claim brought under § 1983 is subject to the limitations period set forth in § 6–2–38(1) of the Alabama Code. *Jones v. Preuit & Mauldin,* 876 F.2d 1480, 1484 (11th Cir.1989); *Foster v. Board of School Comm'rs,* 872 F.2d 1563, 1567 n. 4 (11th Cir. 1989); *see also Woods v. Reeves,* 628 So.2d 563, 564 (Ala.1993); *Grubbs v. Alabama State Bar,* 542 So.2d 927, 931 (Ala.1989). This section provides that a personal injury action must be brought within two years of the alleged harm. Ala.Code § 6–2–38(1) (1975).

Defendants note, and Plaintiff does not refute, that most of the allegedly harassing conduct included in Plaintiff's Complaint occurred prior to August 1, 1994. Defs.' Mot. for Summ. J. at 16–20. The only conduct within this time period that Plaintiff includes in her Complaint consists of comments made to Plaintiff by Driver in which he asked her if she "needed any help with the paperwork" while she was in the bathroom.

> It was not uncommon when I went to the restroom, if the phone rang or something or—he would come into that little powder area prior to going into the actual commode region. and knock on the door and, you know, tell me the phone was for me or somebody was there to see me and do you need any help with the paper work? And it was a joke, I meant. I can't say that he meant anything by that. I can tell that I told him on more than one occasion that he was embarrassing me, to be quiet.

Defs.' Mot. for Summ.J., Ex. 1 (DeVaughn Depo.) at 621.

The court finds that this conduct, while inappropriate, does not rise to the level of sexual harassment. Plaintiff has failed to establish that these comments were sexual in nature, or that they were " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris,* 510 U.S. at 21 (citation omitted). Plaintiff states that the comments allegedly made by Driver were embarrassing. "It was embarrassing to me for everybody to know I was in the bathroom. I really didn't care for some people to know I was in the bathroom." De-Vaughn Depo. at 621. Comments which are merely embarrassing do not create a prima facie case of sexual harassment. Where the "victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment," and there is no sexual

harassment violation. *Harris,* 510 U.S. at 22. Although the offensive conduct need not "cause a tangible psychological injury," the conduct must result in an environment which would reasonably be perceived, and is perceived, as hostile or abusive. *Id.* Accordingly, summary judgment for Defendants on Claim One of Plaintiff's Complaint is due to be granted.

## II. *Claim Two: Due Process*

Plaintiff alleges that Defendants failed to secure the area where she was assaulted, thus violating her Fourteenth Amendment rights to due process by subjecting her to dangerous conditions in City Hall. She brings this claim under 42 U.S.C. § 1983.

Ordinarily, a person does not have a constitutional right under the Fourteenth Amendment to be protected from the criminal acts of third parties. *Mitchell v. Duval County Sch. Bd.,* 107 F.3d 837, 838 (11th Cir.1997) (citing *DeShaney v. Winnebago County Dep't of Social Serv.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). "Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney,* 489 U.S. at 196.

The Eleventh Circuit has articulated an exceptional circumstance in which a constitutional right to such protection does exist. In *Cornelius v. Town of Highland Lake,* 880 F.2d 348 (11th Cir.1989), the Eleventh Circuit held that, where the state has created the danger and where the victim has a special relationship to the state, the victim may have a cause of action under § 1983 for a violation of Fourteenth Amendment due process rights. *Id.* at 352–355.[5]

---

5. In light of the United States Supreme Court's decision in *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the Eleventh Circuit has, on several occasions, questioned the validity of its holding in *Cornelius. See, e.g., Mitchell,* 107 F.3d at 839 n. 3; *Hamilton v. Cannon,* 80 F.3d 1525, 1531 n. 6

(11th Cir.1996); *Lovins v. Lee,* 53 F.3d 1208, 1211 (11th Cir.1995); *Wooten v. Campbell,* 49 F.3d 696, 700 n. 4 (11th Cir.1995); *Wright v. Lovin,* 32 F.3d 538, 541 n. 1 (11th Cir.1994). In each of these cases, the Eleventh Circuit declined to overrule itself, yet distinguished the case before it from the facts in *Cornelius.*

In *Cornelius,* the Mayor of the Town of Highland Lake requested that the Department of Corrections provide the city with inmate labor for general maintenance and public works purposes. *Id.* at 348. While they were working under the supervision of an unarmed civilian, the inmates had access to axes, picks, machetes, knives and saws. *Id.* at 350. Two of these inmates abducted, at knife point, an employee of the town whose job required her to work in close proximity to the inmates. The inmates terrorized the employee for days. The victim then sued various officials pursuant to § 1983, alleging gross negligence and deliberate indifference for failing to protect her from the actions of the inmates and failing to provide adequately trained and skilled officials to supervise the inmates, in violation of her constitutionally protected liberty interests under the Fourteenth Amendment. *Id.* at 350. The Eleventh Circuit held that the defendants owed a duty of protection to the plaintiff by virtue of the "special relationship" that existed between her and the government officials. *Id.* at 352–53. "When the duty which arises by virtue of the special relationship is coupled with some degree of culpable conduct on the defendant's part, § 1983 liability attaches." *Id.* at 353.

What constitutes this "special relationship" and the relevant "culpable conduct" has been narrowly construed. First, in determining whether a "special relationship" exists, the court examines whether a custodial relationship exists between either the state and the perpetrator of the crime, *Mitchell,* 107 F.3d at 839, or the state and the plaintiff, *Taylor v. Ledbetter,* 818 F.2d 791 (11th Cir. 1987). The Eleventh Circuit has found a "special relationship" to exist between the state and incarcerated persons, and the state and involuntarily committed mental patients. *Lovins,* 53 F.3d at 1210. "The Supreme Court has explained that those special relationship decisions 'stand only for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'" *Id.* at 1210 (citing *DeShaney,* 489 U.S. at 199–200).

The Eleventh Circuit has found that no special relationship exists where the defendant neither placed the victim in the dangerous location nor placed the assailants in the place where the victim was. *Mitchell,* 107 F.3d at 839. For example, the court has held that students' attendance at voluntary school programs does not give rise to a constitutional duty of protection. *Wright,* 32 F.3d at 541.

Second, for the state to be liable under the "special danger" analysis, the Eleventh Circuit has stated that the plaintiff must show that the state affirmatively placed him or her in a position of danger distinguishable from that of the general public. *Mitchell,* 107 F.3d at 839. In making this determination, the court examines the state's actions to determine if the acts of the state facilitated the crime's commission. *Id.*

It is both of these factors—the nature of the relationship and the conduct of the state—that determine whether a state may be liable for violating a plaintiff's due process rights by failing to protect him or her from the criminal activity of a third person. For example, in *Cornelius,* the court stated that critical to its finding that the actions of defendants evidenced the existence of a special danger liability was the fact that the perpetrators were in defendants' custody when the victim was attacked. *Cornelius,* 880 F.2d at 357. The court also emphasized the fact that the defendants increased the risk to the victim by having inadequately supervised inmates, while providing them with dangerous weapons and placing them at the victim's workplace. *Id.*

In the instant case, even construing the Plaintiff's allegations in a light most favorable to her, the court finds that she nevertheless fails to present facts sufficient to give rise to liability under the special danger/special relationship theory. Like the Plaintiff in *Cornelius,* Plaintiff here claims that Defendants acted with gross negligence and deliberate indifference in violation of her constitutionally protected liberty interests under the Fourteenth Amendment. *See Cornelius,* 880 F.2d at 351; Compl. ¶ 8.

Plaintiff claims that she stands in a special relationship to the City of Clanton because she was required by her job duties. to be physically present in City Hall and was subject to dangerous conditions there. Plaintiff specifically notes the presence of inmates on work duty, street people, and "derelicts" with uncontrolled access to the storage area where Plaintiff was attacked. Compl. ¶ 32. Plaintiff further alleges that this special relationship exists because the State Department of Pardon and Parole's office is located in the general area of the storage area and parolees have uncontrolled access to this area. Compl. ¶ 32. She claims that Defendants allowed unsupervised prisoners on work detail and vagrants to "roam at will" in City Hall. She alleges that the City of Clanton was on notice of the dangers faced by female employees in City Hall and failed to secure the area. Defs.' Mot. for Summ.J., Ex 15 (Mims Depo.) at 18–21. There is also evidence in the record suggesting that the door to the room where Plaintiff was attacked was not secured prior to the assault. Pl.'s Resp. to Defs.' Mot. for Summ.J. (Connlee Depo.) at 15; Pl.'s Resp. to Def.'s Mot. for Summ.J. (Hall Depo.) at 13.

Even viewing the evidence in a light most favorable to Plaintiff, the court finds that Plaintiff does not allege facts sufficient to warrant application of the "special relationship/special danger" exception to the *DeShaney* rule. First, it is questionable whether her position as a city employee is in the nature of the type of relationship that warrants application of this standard. *See Mitchell*, 107 F.3d at 839 n. 3 (citing *Collins*, 503 U.S. at 127). Second, Plaintiff has failed to provide evidence sufficient to show that Defendants' conduct created a "special danger." The Eleventh Circuit has clearly stated that there must be some degree of culpable conduct on the part of the City in order to hold it liable for the criminal acts of third parties. *See Cornelius*, 880 F.2d at 353. Here, Plaintiff fails to establish that Defendants have engaged in any level of culpable conduct. Unlike the Defendants in *Cornelius*, Defendants here have done nothing active to facilitate the criminal assault on Plaintiff. Defendants neither recruited nor were responsible for the parolees who visited the ADC at City Hall. Defs.' Mot. for Summ.J., Ex. 2 (Driver Aff.) at 2. Nor does the City benefit monetarily from the ADC's presence in City Hall. *Id.*, Further, there is nothing in the record to indicate that Defendants actively considered and permitted access to City Hall for vagrants and inmates on work release.

The only conduct that can be attributed to Defendants relative to the assault on Plaintiff is that Defendants were on notice that some employees felt unsafe in City Hall because of the presence of strangers and parolees in City Hall. Mims Depo. at 18, 21. The court is sympathetic to Plaintiff's argument that the City should have taken action to ensure that inmates on work release and other uninvited people were not allowed to roam City Hall freely. However, the Eleventh Circuit requires more than mere negligence to establish a "special relationship" giving rise to the creation of a special danger. Plaintiff must show that the state affirmatively placed her in a position of danger distinguishable from that of the general public. *Mitchell*, 107 F.3d at 839. In making this determination, the court examines the state's actions to gauge whether the acts of the state facilitated the crime's commission. *Id.*

Plaintiff attempts to analogize Defendants' actions to those of the defendants in *Cornelius*; however, the facts of this case are clearly distinguishable. In *Cornelius*, the Eleventh Circuit found that the City could be held liable for the plaintiff's injuries because the City took affirmative steps to place her in danger. There, the city requested the inmates' presence, facilitated their access to weapons, and placed them under the supervision of an unarmed civilian. Here, in contrast, the City has not affirmatively invited any potentially dangerous people into its building. The City has not actively recruited inmates on work release or vagrants to roam the building. The parolees present in the building are there pursuant to their obligations to the ADC, not Defendants. While Plaintiff alleges that the door to the area where she was attacked was unlocked, she does not establish that the Defendants either unlocked the door or were on notice that the door was unlocked. In fact, the record indi-

cates that, when Driver was aware of the door being unlocked earlier on the day of the assault, he requested that it be locked. Connlee Depo. at 15–16.

The court finds that Plaintiff has failed to establish that Defendants created a "special danger" justifying imposition of liability on the City for violating Plaintiff's Due Process rights. Accordingly, the court finds that Defendants' Motion for Summary Judgment on Claim Two is due to be granted.

### III. Claims III–V: False Arrest, Malicious Prosecution, and Bad Faith Prosecution

Plaintiff alleges that Defendants have violated her Fourth Amendment rights to be free from illegal arrest, and her federal right to be free from malicious prosecution and bad faith prosecution. She brings these claims pursuant to 42 U.S.C. § 1983. Defendants correctly note that, in order to hold a state actor liable under § 1983, Plaintiff must prove that Defendants actually engaged in the conduct she alleges violated her federal rights. *See Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir.1997) (citing *Monell,* 436 U.S. at 690–91); Herren v. Bowyer, 850 F.2d 1543, 1546 (11th Cir.1988).

■ Plaintiff was arrested by a sheriff's deputy subsequent to an indictment being issued against her. Neither Henderson, Driver, nor anyone acting on their behalf placed her under arrest. Defs.' Mot. for Summ.J., Ex. 11 (Henderson Aff.); Defs.' Mot. for Summ.J., Ex. 12 (Driver Aff.). Plaintiff's contention that Defendants Henderson and Driver were "responsible" for giving ABI misleading or inaccurate information, resulting in Plaintiff being indicted by a Chilton County Grand Jury and subsequently arrested on charges of theft by deception and possession of a forged instrument, is unsupported by any evidence in the record. Defendants' affidavits refute these allegations, *See* Driver Aff.; Henderson Aff., and Plaintiff fails to provide any evidence to support her claim. Accordingly, Defendants' Motion for Summary Judgement on this claim is due to be granted. *See Lindsey v. Storey,* 936 F.2d 554, 563 (11th Cir.1991).

■ Similarly, Plaintiff's claims of malicious prosecution and bad faith prosecution fail because Plaintiff does not show how Defendants Henderson and Driver were in any manner responsible for her prosecution. Although Henderson initially requested assistance from ABI for the investigation into the assault on Plaintiff, Henderson did not request that the ABI then investigate Plaintiff for any criminal act. Henderson Aff. at 2–3. Both Henderson and Driver have filed affidavits stating that they did not participate in, influence, or instigate anything related to the indictment and subsequent arrest of Plaintiff. Henderson Aff.; Driver Aff. *See also* Defs.' Mot. for Summ.J., Ex. 17 (Clardy Aff.). Plaintiff has failed to offer any evidence at all refuting Defendants' statements. The record contains no evidence that Defendants were at all involved in the prosecution of Plaintiff. On a motion for summary judgment, the non-moving party must "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e). Because Plaintiff fails to offer any evidence supporting her claim that Defendants engaged in malicious or bad faith prosecution of her, Defendants' Motion for Summary Judgment on these claims is due to be granted. *See Eubanks v. Gerwen,* 40 F.3d 1157, 1160 (11th Cir.1994).

### IV. Claim VI: Defamation and/or Slander Per Se

Plaintiff's claim of defamation and/or slander per se is based upon a state law cause of action. Because the court finds that Defendant's motion for summary judgment on Plaintiff's federal causes of action are due to be granted, the court no longer has jurisdiction over the defamation claim. *See* 28 U.S.C. § 1367(c)(3). The court emphasizes that dismissal of the defamation claim is without prejudice. The statute of limitations on this claim has been tolled while this action was pending in federal court. 28 U.S.C. § 1367(d).

## ORDER

For the reasons set forth above, it is CONSIDERED and ORDERED that Defendants' motion for summary judgment on Plaintiff's Claims I through V be and the same is hereby GRANTED. It is further CONSIDERED and ORDERED that Plaintiff's Claim VI be and the same is hereby DISMISSED WITHOUT PREJUDICE for want of jurisdiction. Additionally, it is hereby CONSIDERED and ORDERED that Defendants' Motion to Strike the Affidavit of Richard Davis and Motion to Strike the Affidavit of Dawn DeVaughn be and the same are hereby GRANTED.