32 F.3d 538
 93 Ed. Law Rep. 1136
 Eva Loletta WRIGHT, Individually and as sole surviving
parent of Daniel James Wright, a deceased minor,
Plaintiff-Appellant,
v.
Joe LOVIN, Individually and in his official capacity as
Clayton County School Superintendent; Walter Stanford,
Individually and in his official capacity as Administrative
Assistant to the Clayton County School Superintendent; Jim
Lancaster, Individually and in his official capacity as a
Principal for the Clayton Co. Bd. of Ed.; Richard Ashe,
Individually and in his official capacity as an Assistant
Principal for the Clayton Co. Bd. of Ed.; Winnie Anderson,
Individually and in her official capacity as a teacher
employed by the Clayton Co. Bd. of Ed.; Patricia Hunt,
Individually and in her official capacity as a teacher
employed by the Clayton Co. Bd. of Ed.; Clayton County
Board of Education; Clayton County School District,
Defendants-Appellees.
 No. 93-9304
 Non-Argument Calendar.
United States Court of Appeals,
Eleventh Circuit.
 Sept. 21, 1994.
 
 Gary H. Brakefield, Stockbridge, GA, for appellant.
 J. Stanley Hawkins, Gary M. Sams, Weekes & Candler, Decatur, GA, for appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before COX, DUBINA and CARNES, Circuit Judges.
 DUBINA, Circuit Judge:
 
 
 1
 Appellant Eva Loletta Wright ("Wright") appeals the district court's grant of summary judgment against her on claims brought under 42 U.S.C. Sec. 1983 on behalf of herself and her deceased son, Daniel James Wright ("Daniel"), against the Clayton County School district ("the school") and various individuals. Wright's son was killed in an automobile accident that occurred when he and a friend left a voluntary summer school session at North Clayton High School in violation of school rules. At the time of his death, Daniel was fifteen years old.
 
 
 2
 The first issue Wright presents on appeal is whether the district court improperly granted summary judgment in favor of the defendants on her claim that the defendants are liable under section 1983 for violating her son's substantive due process rights under the Fourteenth Amendment by intentionally failing to enforce policies designed to protect the health, safety, and well-being of students. This court reviews grants of summary judgment de novo. RJR Nabisco, Inc. v. United States, 955 F.2d 1457, 1459 (11th Cir.1992). We must determine whether after discovery, there remained a genuine triable issue of fact or whether the movant was entitled to judgment as a matter of law. Kee v. National Reserve Life Ins. Co., 918 F.2d 1538, 1540 (11th Cir.1990).
 
 
 3
 The district court held that the school had no constitutional duty to protect Daniel because he was not in its "custody" and because his death was caused not by the school but by a private actor with no "special relationship" to the school. Wright argues that the school did owe Daniel a constitutional duty to prevent him from leaving school in an automobile during school hours because of a "special relationship" between schools and school children.
 
 
 4
 The substantive component of the Due Process Clause protects only those rights that are fundamental. McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc). Substantive due process rights are created only by the Constitution, not by state laws. Id. Hence, tort law remains largely outside the scope of substantive due process jurisprudence. Id.
 
 
 5
 "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). In DeShaney, the Supreme Court expressly rejected the argument that a constitutional duty of protection can arise from a state's "special relationship" with a particular individual where the state played no part in creating the danger posed to the individual. Id. at 197, 109 S.Ct. at 1004. However, the Court did concede that a duty of protection can arise where the state has placed an individual in danger by depriving him of the liberty to protect himself, such as through incarceration in prison or involuntary commitment in a mental institution. Id. at 198-99, 109 S.Ct. at 1004-05.
 
 
 6
 [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.... The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.... In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf--through incarceration, institutionalization, or other similar restraint of personal liberty--which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.
 
 
 7
 Id. at 199-200, 109 S.Ct. at 1005-06 (citations omitted).
 
 
 8
 Despite the Supreme Court's firm rejection of the special relationship argument in DeShaney, Wright argues that the school had a constitutional duty to protect Daniel by virtue of the special relationship between schools and school children. To date, every federal circuit court of appeal to address the question of whether compulsory school attendance laws create the necessary custodial relationship between school and student to give rise to a constitutional duty to protect students from harm by non-state actors has rejected the existence of any such duty. See Dorothy J. v. Little Rock School Dist., 7 F.3d 729 (8th Cir.1993); D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir.1992) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); Maldonado v. Josey, 975 F.2d 727 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993); and J.O. v. Alton Community Unit School Dist. 11, 909 F.2d 267 (7th Cir.1990). According to these circuits, mere compulsory attendance laws do not result in the level of custody envisioned by the Supreme Court in DeShaney. These circuits reason that mandatory attendance at a public high school simply does not restrict one's liberty in the same sense that incarceration in prison or involuntary commitment in a mental institution does. In contrast, a school child and the child's parents retain the liberty to provide for the child's basic needs. Because Daniel's attendance at summer school was voluntary and not compulsory, we need not, and do not, decide whether mandatory school attendance laws impose a constitutional duty on schools to protect students from injury by third parties. However, we find that the reasons given by our sister circuits for the absence of such a duty when school attendance is mandatory are even more compelling when school attendance is voluntary. Therefore, we hold that Daniel's voluntary school attendance did not create a custodial relationship between himself and the school sufficient to give rise to a constitutional duty of protection.
 
 
 9
 Even if Daniel was in the school's custody as defined in DeShaney, the school did not violate his substantive due process rights. Daniel's tragic death did not in any way result from the school's restraint on his liberty to protect himself. In fact, his death resulted at best from the school's failure to restrain his personal liberty. Daniel's death resulted from his own choice to leave the school in violation of the school's policies. The school did not make him leave or prevent him from remaining safely at school. On the contrary, it took measures to keep students at school during school hours. The mere fact that the school's gratuitous efforts to keep Daniel at school failed does not constitute a violation of Daniel's substantive due process rights. In addition, even if Daniel was initially in the school's custody, he had unquestionably departed from that custody at the time of his death.
 
 
 10
 Even absent the type of custody discussed in DeShaney, however, it is still possible under very narrow circumstances that a duty of protection may arise by virtue of a special relationship. This circuit has held that "government officials may be held liable for the deprivation by a third party of a private citizen's due process rights when a special relationship is found to exist between the victim and the third party or between the victim and the government officials." Cornelius v. Town of Highland Lake, 880 F.2d 348, 352-53 (11th Cir.1989), cert. denied, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).[1] "When the duty which arises by virtue of the special relationship is coupled with some degree of culpable conduct on the defendant's part, Sec. 1983 liability attaches." Id. at 353. It is the special relationship that establishes the required nexus between the plaintiff's alleged due process violation and the government officials' conduct. Id. at 353 & n. 6.
 
 
 11
 On the facts of this case, there is no such special relationship between the school and Daniel. First, as discussed in DeShaney, 489 U.S. at 197, 109 S.Ct. at 1004, and Cornelius, 880 F.2d at 356, there can be no nexus or special relationship between Daniel and the school where the school did not create the dangerous situation or render Daniel more vulnerable to it. The school did not cause Daniel to suffer an automobile accident. Rather, it merely failed to save Daniel from an automobile accident, a danger faced by all of us in our daily lives. Second, it is implicit in our holding that voluntary school attendance does not give rise to a constitutional duty of protection that the mere consensual relationship of school to school children, without more, does not constitute a "special relationship." See Dorothy J., 7 F.3d at 734 (holding that compulsory attendance laws create neither a custodial nor a special relationship). The voluntary school to school children relationship simply does not give the school the requisite degree of control over the school children to give rise to a duty of protection.
 
 
 12
 In sum, the school did not violate Daniel's substantive due process rights and, accordingly, the district court's grant of summary judgment in favor of the defendants on this claim is affirmed.
 
 
 13
 The second issue raised by Wright is whether the district court erred in granting summary judgment in favor of the defendants on Wright's claim that the defendants violated Daniel's procedural due process rights. Wright's arguments on this issue are totally without merit and warrant no further discussion. The district court's grant of summary judgment on the procedural due process claim is affirmed.
 
 
 14
 Finally, Wright appeals the district court's grant of summary judgment in favor of the defendants on her claim that the latter violated Wright's substantive due process rights by depriving her of a liberty interest in her parent-child relationship. Given that this claim is based on the same operative facts as Daniel's substantive due process claim and that we have already concluded that Daniel's substantive due process rights were not violated, it necessarily follows that the substantive due process rights of Daniel's mother were not violated either.
 
 
 15
 In conclusion, we affirm the district court's grant of summary judgment in all respects.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 We note that there is some doubt whether our holding in Cornelius has survived the Supreme Court's recent holding in Collins v. City of Harker Heights, --- U.S. ----, ----, 112 S.Ct. 1061, 1070-71, 117 L.Ed.2d 261 (1992), that a voluntary employment relationship, standing alone, does not impose a constitutional duty on governmental employers to provide a reasonably safe work environment. Because we hold that the present case is distinguishable from Cornelius, we do not purport to decide today the continuing validity of that case