United States Court of Appeals,

Eleventh Circuit.

No. 95-3431.

R. Glen MITCHELL, as Personal Representative for the Estate of Richard Jefferson Mitchell, Plaintiff-Appellant,

v.

DUVAL COUNTY SCHOOL BOARD, James Jaxon, Defendants-Appellees.

March 17, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 95-678-CIV-J-20), Harvey E. Schlesinger, District Judge.

Before ANDERSON, Circuit Judge, and KRAVITCH[*] and HENDERSON, Senior Circuit Judges.

PER CURIAM:

## I. BACKGROUND

This case undoubtedly involves a tragic situation: while standing on the edge of a parking lot at Terry Parker High School on November 4, 1993, fourteen year old Richard Jefferson Mitchell (Mitchell) was shot and killed by non-student, third party assailants attempting to rob him. Mitchell had attended a school-sponsored function earlier that evening, and was waiting for his ride home. According to appellant's complaint, Mitchell had attempted to telephone his father from the school administration office, but was denied entry to the office by school officials. Mitchell used an outside pay phone to call his father, and then waited for his father outdoors on a driveway near the school parking lot.

---

[*]Judge Kravitch was in regular active service when this matter was originally submitted but has taken senior status effective January 1, 1997.

Appellant R. Glen Mitchell, as personal representative for the estate of Richard Jefferson Mitchell, brought suit pursuant to 42 U.S.C. § 1983, claiming that the actions of the defendants, Duval County School Board and its high school principal, James Jackson, resulted in the deprivation of Mitchell's rights, privileges and immunities as guaranteed by the Due Process Clause of the Fourteenth Amendment. The district court granted defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a cause of action upon which relief could be granted.[1] On appeal, appellant contends that, while ordinarily a school or other government entity is not obligated to protect persons from the crimes of third parties, the circumstances of Mitchell's death qualify for an exception to this rule.

## II. DISCUSSION

Generally a person does not have a constitutional right under the Fourteenth Amendment to be protected from the criminal acts of third parties. *See DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989) (stating that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors"). However, appellant argues that courts have found such protection in two special circumstances: where the state has created the danger, and where the victim has a special relationship to the state. The

---

[1]This Court reviews *de novo* a district court's order dismissing a complaint, accepting all allegations in the complaint as true and construing the facts in a light favorable to the plaintiff. *Fortner v. Thomas,* 983 F.2d 1024, 1027 (11th Cir.1993).

dispositive issue in this appeal is whether appellant has stated a viable claim, under either theory, that the school defendant violated a constitutional duty owed to Mitchell.

We summarily reject the latter theory on the basis of *Wright v. Lovin,* 32 F.3d 538 (11th Cir.1994). In circumstances not distinguishable in principle from the circumstances of this case, the *Wright* court rejected the argument that a student attending a voluntary program has a special relationship with his school sufficient to impose a constitutional duty on the school to protect the student from injury by third parties. *Id.* at 540.[2]

We turn to appellant's other theory, i.e., that the school defendant in this case created the danger. In *Cornelius v. Town of Highland Lake, Ala.,* 880 F.2d 348, 352-55 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990), we held that a state has a duty to protect an individual from third parties when the state's actions place an individual in "special danger." 880 F.2d 348, 352-55. While there is some question whether *Cornelius's* special danger theory of liability remains good

---

[2]In *Wright,* as in this case, the school program being attended by the student was a *voluntary* one. In such circumstances, the court held that no special relationship existed between the school and the student sufficient to give rise to a constitutional duty on the part of the school to protect the student from harm by non-state actors. Although noting that it need not decide the somewhat different issue of whether *mandatory* school attendance gave rise to the special relationship between school and student, the court pointed out that every court of appeals which had addressed that issue had found an absence of the special relationship and had refused to impose a constitutional duty to protect the student from injury by third parties. *Id.* (citing cases to this effect).

law,[3] we need not decide that issue today.  Assuming *arguendo* that *Cornelius* has not been undermined, we find that appellant's pleadings nevertheless failed to state a claim.

In order for a plaintiff to hold the state liable under the "special danger" analysis, he must show that the state affirmatively placed him in a position of danger which was distinguishable from that of the general public.  *Cornelius,* 880 F.2d at 354-56.  In describing the necessary factors for finding liability under the state-created danger theory, the Fifth Circuit has emphasized that the acts of the state must facilitate the crime's commission:

> [T]he environment created by the state actors must be dangerous;  they must know it is dangerous;  and to be liable, *they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.*

*Johnson v. Dallas Indep. Sch. Dist.,* 38 F.3d 198, 201 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995) (emphasis added).  In determining whether the above standard is satisfied, courts look both at state actions increasing danger and to the related factor of whether a custodial relationship exists between the state and the perpetrator of the crime.  For example, in *Cornelius,* a work squad inmate in the

---

[3] *Cornelius* may not have survived *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), where the Supreme Court held that a voluntary employment relationship does not impose a constitutional duty on government employers to provide a reasonably safe work environment.  503 U.S. at 127, 112 S.Ct. at 1069.  *See Hamilton By and Through Hamilton v. Cannon,* 80 F.3d 1525, 1531 n. 6 (11th Cir.1996); *Lovins v. Lee,* 53 F.3d 1208, 1211 (11th Cir.1995);  *Wooten v. Campbell,* 49 F.3d 696, 700 n. 4 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 279, 133 L.Ed.2d 302 (1995);  *Wright v. Lovin,* 32 F.3d 538, 541 n. 1 (11th Cir.1994).

municipality's custody was permitted to leave the prison under the supervision of an untrained and unarmed civilian employee. The inmate was given access to dangerous weapons, was placed in the vicinity of the victim's workplace, and was able to use these weapons to kidnap and terrorize the municipal employee at knife point. 880 F.2d at 355, 357. Critical to our finding that the actions of the defendants evidenced the existence of special danger liability was "the fact that the work squad inmates were in the defendants' custody when Mrs. Cornelius was kidnapped"; and, under the stated circumstances, "the defendants' conduct ... significantly increased both the risk of harm to the plaintiff, and the opportunity for the inmates to commit the harm." *Id.* at 357. *See also Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277 (6th Cir.1987) (where the county allowed an inmate on "trusty" status to have unsupervised use of a patrol car equipped with standard blue flashing lights and identifying markings, and the inmate used the patrol car's lights to pull over plaintiff's daughter and beat her to death).

Accepting appellant's allegations as true and construing them in a light most favorable to appellant, we find that the pleadings nevertheless failed to present facts sufficient to give rise to liability under the special danger theory. According to appellant, the school's policy of not allowing students to use the administration office telephone affirmatively placed Mitchell in an inherently dangerous situation. We disagree. There is no allegation that the outside pay telephone which Mitchell used was in a dangerous location; indeed, it was established beyond doubt

at oral argument that appellant cannot prove that it was in an inherently dangerous location.  In addition, nothing in the school's policy required Mitchell to wait where he did.  Even if, as appellant alleges, Mitchell was not allowed to wait inside the administration office, Mitchell had the option of waiting either inside the building or immediately outside.  For example, Mitchell could have waited in the school's courtyard, which is immediately adjacent to the administration office.  Instead of waiting there, Mitchell stood a considerable distance away on the edge of the school's parking lot.  We conclude that it is beyond doubt that appellant cannot prove a set of facts that any school policy required Mitchell to wait in an inherently dangerous location.

Also, in this case there was no connecting relationship between the appellees and Mitchell's assailants.  Thus, this case is distinguishable from *Cornelius* with respect to both factors which the *Cornelius* court found significant.  First, in *Cornelius,* the government had custody and control of the inmate work squad; here the school had no such relationship with Mitchell's assailants.  Second, in *Cornelius,* the government increased the risk of danger to the victim by having inadequate supervision of the inmates, by providing the inmates with dangerous weapons and by placing the inmates at the victim's workplace, thus subjecting her to a danger distinct from that of the general public.  By contrast, in the instant case, the school did not create the danger;  the school neither placed Mitchell in a dangerous location nor placed the assailants in the place where Mitchell was.

III. CONCLUSION

For the foregoing reasons, the district court's dismissal of appellant's § 1983 claim is

AFFIRMED.