**Jane DOE** [1] **Plaintiff,**

**v.**

**CITY OF MARION, Indiana, a municipal corporation, by and through the City of Marion, Indiana Police Department and Sergeant Rob Raymer in his official and individual capacity Defendants.**

**No. 1:00CV–0468.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

April 23, 2002.

---

1. Because of the nature of the underlying events giving rise to this action, the plaintiff has been permitted to proceed using the name

"Jane Doe" and certain portions of the record have been ordered sealed. See Docket # 17,

Peter Campbell King, Cline King and King PC, Columbus, John B Milford, Milford Drook and Shoup, Marion, for Jane Doe, plaintiffs.

Robert T Keen, Jr, Monica S Sandkuhler, Miller Carson Boxberger and Murphy, Fort Wayne, for Marion City of, a Municipal Corporation, Marion Police Department, Rob Raymer, Sergeant, in his official and individual capacity, defendants.

Order dated February 1, 2002, granting in part and denying in part motion for leave to file under seal.

## MEMORANDUM OF DECISION AND ORDER

LEE, Chief Judge.

Presently before the court are a host of motions including: Defendants' Motion for Summary Judgment filed on February 2, 2002; Plaintiff's Motion to Strike Defendants' Evidentiary Materials, Item #4, filed on March 1, 2002; Plaintiff's Second Motion to Strike Defendants' Evidentiary Materials, filed on March 27, 2002; and Defendant's Motion to Strike Plaintiff's Designation of Charles Braun as an expert witness, filed on March 18, 2002. All of these motions have been fully briefed and are ripe for consideration.

For the following reasons, Defendant's Motion for Summary Judgment will be GRANTED; Plaintiff's Motions to Strike and Defendants' Motion to Strike will all be DENIED as MOOT.

### APPLICABLE STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 1256; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368,

374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

### FACTUAL BACKGROUND

This case arises out of an unfortunate series of events involving a then-minor child, Jane Doe ("Doe") and a middle school teacher, Carol Rigsbee ("Rigsbee"). For purposes of this action, the relevant timeline of events begins in September or early October 1997.[2] During this time, Defendant, Sergeant Rob Raymer ("Ray-

---

**2.** Plaintiff presents an extensive 47 page statement of facts most of which are irrelevant to the legal issues presented by Defendants' Motion for Summary Judgment. As a result, only those facts pertinent to the legal issues have been recited in this section.

mer") was informed by Marion police officer Larry Shaw ("Shaw") that Shaw and other officers had overheard, via a police scanner, sexually explicit cellular telephone conversations between two females. Shaw further informed Raymer that the conversations were between an unknown adult female and a younger female, known in the conversations by her first name only.

After learning of these telephone conversations, Raymer intercepted cellular telephone conversations four or five times over the next two months.[3] The content of the conversations caused him to believe that the adult female was a middle school teacher and that the younger female was a student.[4] Raymer became concerned that the young girl might be the victim of molestation and brought the matter up to the other officers and Lieutenant Andrea Dunn during shift line-up.[5] The date of this line-up discussion is unclear in the record. According to Raymer, however, the line-up discussion occurred several days to a week before November 25, 1997. At the time he initiated the line-up discussion, Raymer knew Jane Doe's first name

and that she was a student. Raymer did not, however, know the last name of Jane Doe.

During this line-up discussion, Gary Henderson ("Henderson"), a Marion police officer, recognized Jane Doe's first name because it was an uncommon name. He indicated to Raymer that he knew a middle school teacher, (hereafter, "Rich Doe") that had a fourteen or fifteen year old female daughter matching the first name of Jane Doe .[6]

Within a day or two of learning Rich Doe's name, Raymer obtained Rich Doe's telephone number. Shortly thereafter, Raymer overheard, again via scanner, another telephone conversation between Jane Doe and the adult female, later determined to be Rigsbee. While that telephone conversation was ongoing, Raymer dialed Rich Doe's phone number, waited until he heard, via the scanner, his cell phone ring on the house phone of Jane Doe, and hung up. At this point, Raymer believed that Jane Doe was the young person who had been part of the telephone conversations he overheard.[7]

---

3. Apparently, the majority of these phone calls occurred during weekend nights.

4. At the time he was listening to these conversations, Raymer did not know the age of the student and, according to his testimony, she could have been a nineteen year-old senior and not a minor child.

5. Raymer stated that "line-up" takes place at the start of a shift and involves officer roll call and the assignment of particular work. (Raymer Dep. p. 30).

6. During the line up discussion, Henderson recalled Lieutenant Dunn stating that there was nothing the department could do because the officers were illegally intercepting cellular telephone conversations. This response upset Henderson because he believed a crime was ongoing and that molestation is immoral. However, Henderson interpreted Dunn's statement as a directive from the department that nothing could be about the situation.

Dunn does not recall the line-up discussion in the same way as Henderson. Dunn testified that during the discussion the officers mentioned that they were listening to cellular traffic on their scanners and casually mentioned a lesbian conversation between two women that they overheard. According to Dunn, the officers wanted to know whether this interception was legal and what to do if they overheard criminal activity. (Dunn Deposition, pp. 29–31).

7. Doe claims that any person listening to the conversations between herself and Rigsbee would have known her identity well before Raymer claims he did. However, she has no specific facts to show that Raymer did know her full identity before the date Raymer says he did nor does she have any facts as to which conversations Raymer intercepted so as to show that he would have known her identity earlier. In any event, even if the court assumes that Raymer did know Doe's identity as early as October 1997, this fact

On November 25, 1997, Raymer approached Kent Cocking ("Cocking"), a counselor at Tucker Middle School, to discuss what he knew of this situation with him. Cocking and Raymer then approached Rich Doe and informed him of their suspicions of a sexual relationship between Jane Doe and Rigsbee. Raymer, Rich Doe and Cocking then spoke with Mary Pahmeier ("Pahmeier"), Principal of Jones Middle School.[8] Raymer then spoke to Rigsbee who admitted molesting Jane Doe.

At some point shortly thereafter (the record is unclear as to the specific date), Raymer contacted the Prosecutor's Office and informed it of the above events. Subsequently, on December 1, 1997, Raymer discussed the above events in detail with Lieutenant Dunn and advised her that he had contacted the Prosecutor's Office and provided all of the information he had to them.

On December 2, 1997, Raymer authored an incident report wherein he described essentially the same events as related above. This was the first time he or any other officer had filed a written report of the ongoing events.[9]

Carol Rigsbee was ultimately prosecuted for child molestation and served jail time.

Pursuant to Indiana Code § 31–33–5–1, a person who has reason to believe that a child is a victim of child abuse is required to make a report to the appropriate authority. Indiana Code § 31–33–5–3 provides that such a report must be made to either (1) the local child protection service or (2) the local law enforcement agency. There is no rule or departmental regulation in the Marion City Police Department's book of Standard Operating Rules and Procedures or General Orders Manual which directs police officers about the reporting requirements under Indiana law. In addition, a number of officers testified in their depositions that they do not recall instances of specific training regarding child abuse/molestation crimes.

Based upon the above facts, Jane Doe sued Sergeant Raymer individually and in his official capacity as well as the City of Marion ("the City"), pursuant to 42 U.S.C. § 1983, claiming that the Defendants violated her right to substantive due process under the Fourteenth Amendment by failing to intervene sooner to stop the ongoing molestation. Jane Doe also claims that the City failed to properly train its police officers on how to investigate child abuse crimes.

### DISCUSSION

Section 1983 is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). To prevail on a claim under section 1983, plaintiff must therefore show "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996); *see also, Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). In their motion, Defendants focus on the first requirement, whether there exists a genuine issue of

does not change the legal analysis adopted herein.

**8.** Rigsbee was employed at Jones Middle School.

**9.** Raymer was eventually suspended for two days because, according to his supervisor, he should have filed a written police report as soon as he believed a molestation crime was occurring.

material fact that the defendants deprived the plaintiff of her Fourteenth Amendment right to substantive due process.

██ Suit may be brought against individual officers in either their official or individual capacity or both. Here, Doe brings suit against Raymer in both his individual and official capacities. The distinction is telling because where suit is brought against an individual in his official capacity it is really a claim against the municipality, *see, Gossmeyer v. McDonald,* 128 F.3d 481, 494 (7th Cir.1997) and thus, Doe's claim against Raymer in his official capacity is another way of making a claim against the City. The court turns first to Doe's individual capacity claim against Raymer and then to Doe's allegations of municipal liability.

## I. *Substantive Due Process: Individual Capacity Claim Against Raymer*

With respect to Raymer individually, Doe claims that Raymer's failure to act sooner to intervene and stop the molestation violated her substantive due process rights under the "state-created danger exception" which was developed from language in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The Seventh Circuit recently summarized the facts and holding of *DeShaney* in *Dykema v. Skoumal,* 261 F.3d 701, 704–705 (7th Cir.2001):

> *DeShaney* held that the state had no constitutional duty to protect a child against his father's violent abuse. In *DeShaney,* there was strong evidence of child abuse in the home, and on one occasion the child required emergency hospital care. The county social services agency looked into the charge and the juvenile court as a result placed the child in the temporary custody of the hospital. A child protection team was assembled, ad hoc, which recommended certain measures to protect the child. The father voluntarily agreed to comply with the team's recommendations and the court returned the child to the father's custody. The caseworker made monthly visits for the next six months, each time noting suspicious injuries on the child and recording that none of the protective measures had been adopted. Calls from emergency room physicians also continued, the last one made in November 1983. The caseworker made two more visits but did nothing except to note that on both occasions she was told the boy was too ill to be seen. No other action was taken. In March 1984, the father beat the four-year-old boy so severely that he suffered permanent brain damage and was expected to spend the rest of his life institutionalized. The father was subsequently convicted of child abuse, but that was too late to benefit the boy.

*Id.* at 704–705 (internal citations omitted). Based upon the above facts, the Supreme Court concluded that:

> [O]ur cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.... If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*DeShaney,* 489 U.S. at 196–197, 109 S.Ct. 998, 103 L.Ed.2d 249.

In coming to the above conclusion, the Supreme Court left open the possibility that a constitutional violation might occur if the state were to create a danger that deprives an individual of Fourteenth Amendment rights. See *id.* at 201, 109 S.Ct. 998 (stating that even though the state may have been aware of the danger, "it played no part in their creation, nor did it do anything to render him any more vulnerable to them."). This theory has become known as the "state-created danger" exception and it is a recognized theory in this circuit, see *Dykema*, 261 F.3d at 704; *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir.1993). Under the exception, liability arises where the state action "creates, or substantially contributes to the creation of a danger or renders citizens more vulnerable to a danger than they otherwise would have been." *Id.* (quoting *Reed*, 986 F.2d at 1126).

Defendants argue that there can be no liability under the state-created danger exception because the exception requires evidence of some affirmative act by the state actor that creates, heightens, or increases the danger to the Plaintiff. *See Reed*, 986 F.2d at 1127 ("we do suggest that officers may be subject to suit under section 1983 if they knowingly and affirmatively create a dangerous situation for the public and fail to take reasonable preventative steps to diffuse that danger."); *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir.1995) (liability under the state-created danger theory must be predicated on the state's affirmative acts which work to plaintiff's detriment in terms of exposure to danger which plaintiff was not already exposed to); *Pinder v. Johnson*, 54 F.3d 1169, 1176 n. *, 1177 (4th Cir.1995) ("All [cases recognizing liability outside the custodial context] involved some circumstance wherein the state took a much larger and more direct role in "creating" the danger itself. . . . In such instances, the state is not merely accused of a failure to act; it

becomes much more akin to an actor itself directly causing harm to the injured party.");*D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1374–75 (3d Cir.1992) ("[l]iability under the state-created danger theory is predicated upon the states' affirmative acts" and cases applying the theory find that the state "affirmatively acted to create the danger to the victims"); *Brown v. Grabowski*, 922 F.2d 1097,1116 (3d Cir.1991)(officer's failure to act does not subject him to liability). Here, the Defendants contend, the only conduct alleged by Doe is an omission to act which did not expose the plaintiff to any additional risk of harm. Thus, Defendants argue that Doe has failed to establish a substantive due process violation under the theory of a state-created danger.

■ Doe appears to agree with the general principal that substantive due process requires some affirmative act by a state actor. In fact, she attempts to frame her response by using this terminology. For instance, she repeatedly states that the "affirmative act" in this case is the failure of Raymer and others to act. *See Response* p. 10 ("Raymer failed to take the affirmative step required by Indiana law to immediately report the reasonable belief of child abuse and or neglect to the Department and/or to the Office of Family and Children"); Response, p. 11 ("Raymer and the City affirmatively abandoned the investigation. . ."). Whether the failure of the Defendants to act as alleged by Doe can be classified as an "affirmative act" by the state is an interesting question. Yet, the real question posed by the parties' arguments is whether Raymer or the City used their authority to create a danger or render the plaintiff more vulnerable to a danger than she otherwise would have been. See *Monfils v. Taylor*, 165 F.3d 511 (7th Cir.1998) (a cause of action exists if plaintiffs allege "state action that creates, or substantially contributes to the creation

of, a danger or renders citizens more vulnerable to a danger [than] they otherwise would have been); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 915 (3d Cir. 1997) ("[T]he dispositive factor appears to be whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or an omission."). This court's review of the evidence reveals that they did not.

Case law in this circuit and others is replete with situations where a state actor's failure to prevent, intervene, or otherwise take some action to alleviate a potential danger has been held not to be enough for liability under the state-created danger exception. In *Dykema*, a paid informant, who was shot and seriously wounded while working with a narcotics squad, brought a § 1983 action for damages against squad, squad members, and city claiming that the defendants placed him in a position of peril by using him as an informant. *Dykema*, 261 F.3d at 703. The Seventh Circuit rejected Dykema's claim and found that the state did not create any danger to Dykema by utilizing his services as a confidential informant because it had not promised to protect Dykema nor did Dykema seek the defendants' protection while working as an informant. *Id.* at 706–707. Rather, the court, after citing to two cases with distinguishable fact patterns,[10] stated "we have a factual situation which cannot be squeezed into any *DeShaney* exception, or into the exceptions which have grown out of *DeShaney*." *Id.* at 705.

In *Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir.1997), a teacher was killed in a day care center located in a public high school. *Id.* at 904. The assailant entered the building through an un-locked entrance; he was later convicted and incarcerated in a psychiatric hospital. *Id.* In an action against the school district for creating the dangerous condition that led to the death, the court found that the plaintiff did not meet his burden of proving these defendants placed the victim in harm's way. See *id.* at 916. In another Third Circuit decision, *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364 (3d Cir.1992) (en banc), cert. denied, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993), two high school students filed a § 1983 claim alleging they were sexually molested by fellow students in the bathroom and darkroom of their graphic arts class room.. According to their complaint, the high school's failure to adequately supervise the class or investigate the misconduct created the dangerous situation that resulted in their injuries. The Third Circuit affirmed the district court's dismissal of the claim holding that the school was not liable because the plaintiffs did not demonstrate that the state placed the plaintiffs in danger, increased their risk of harm, or made them more vulnerable to danger.

Likewise, in *Mitchell v. Duval County Sch. Bd.*, 107 F.3d 837 (11th Cir.1997), the court of appeals rejected a state-created danger claim wherein the decedent, Richard Mitchell, was a fourteen year-old student who was shot and killed one evening while waiting for a ride home from a school function. Mitchell had attempted to telephone his father from inside the school administration office, but was denied entry. Instead he used an outside pay phone, and, while waiting for his father on a driveway adjacent to the school, was shot and killed during a robbery attempt. The court of appeals rejected plaintiff's state-created danger theory on the grounds that he failed to "show that the state affirma-

---

**10.** The two cases referenced were the Seventh Circuit's decision in *Reed v. Gardner*, 986 F.2d 1122 (7th Cir.1993) and *Monfils v. Taylor*, 165 F.3d 511, 513 (7th Cir.1998).

tively placed decedent in a position of danger." *Id.* at 839. According to the court, nothing the school did "required [decedent] to wait where he did." Indeed, the boy could have waited inside the administration building or immediately outside, rather than waiting "a considerable distance away on the edge of the school's parking lot." *Id.See also, Estate of Burke v. Mahoney City et al.,* 40 F.Supp.2d 274 (E.D.Pa.1999), aff'd. without opinion, 213 F.3d 628 (3d Cir.2000) (finding no state-created danger where officers "simply let the events unfold as they stood idly bye [sic]").

Here, there is nothing in the record which suggests that the Defendants created the situation between Rigsbee and the plaintiff. Indeed, by plaintiff's own admission the relationship between herself and Rigsbee was abusive well before police heard the suspicious cellular telephone conversations between the two. Thus, Raymer's acts or omissions did not increase the risk of injury beyond what it would have been had Raymer not intervened at all.

Nevertheless, Doe cites to the Seventh Circuit's decisions in *Reed* and *Monfils* to support her contention that the failure to act by Raymer and others falls within the "state-created danger" exception. However, as the Seventh Circuit noted in *Dykema,* the holdings in these cases are based upon "unique factual situations" and it is clear that these types of circumstances are not present in this case. *Dykema,* 261 F.3d at 705.

In *Reed,* for instance, the court, in a close case, found that the defendant police officers increased the risk of a drunk driving accident by removing a sober driver from the car and leaving a drunk passenger to drive the car home, *id.* at 1125, but if the officers had arrested an inebriated driver and left another inebriated passenger to drive the car, the risk of an accident would not have increased because the drunk driving risk would have remained the same. *Id.* Thus, in *Reed* the court found that the act of leaving the drunk passenger with the means to drive home was an "affirmative act" for purposes of the state-created danger exception.

Similarly, in *Monfils,* Monfils made an anonymous telephone call to the police informing them that another employee was planning to steal company property. Monfils required anonymity because he knew that the other employee had a reputation for violence. Ultimately, the employee was caught while attempting to steal company property and vowed to discover the informant's identity. Monfils then contacted the defendants trying to prevent the release of the recorded telephone call he had made to the police. Monfils was assured that the tape would not be released but one officer found the tape and turned it over to the employee. The employee recognized Monfils voice on the tape and murdered him several hours later. The Seventh Circuit concluded that the false assurances of protection by the police, qualified as an affirmative act for purposes of a state-created danger claim. *Monfils,* 165 F.3d at 516.

Here, the Defendants, and specifically Raymer, made no false promise of protection to Doe (and she never requested protection from the police), nor did the Defendants or Raymer do anything to create or exacerbate the situation between Rigsbee and Doe.[11] Raymer simply stood by and

---

**11.** Doe makes much of the fact that Raymer did not report what he did know to the Division of Child and Family Services as required by Indiana statute. However, the statute in question requires reporting to *either* a local law enforcement agency *or* the local child protection service. Raymer, by virtue of the fact that he was a member of law enforcement, does not appear to have had any addi-

permitted the status quo to continue until he had information from which he could identify Jane Doe. In the course of his investigation, Raymer did not, for instance, knowingly place Doe in a position where Rigsbee would have additional access and opportunity to continue the molestation. In fact, the police had no contact whatsoever with Doe or Rigsbee until November 25. Any access Rigsbee had to Doe prior to that time occurred without any police intervention or aid. Accordingly, the court cannot conclude that Raymer imperiled Doe by failing to intervene sooner. Therefore, Defendants' Motion for summary judgment is GRANTED as to Raymer's in his individual capacity.[12]

## II. *Municipal Liability*

▪ As noted above, Doe also brings an official capacity claim against Raymer and, in addition, she has sued the City. To succeed on a claim against a municipality, the plaintiff must show that the municipality maintained an express policy of depriving its citizens of their constitutional rights, *see, McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995), that its practice of depriving citizens of their constitutional rights, though not authorized or not written, was so widespread so as to have the force of law, *Board of County Comm'n of Bryan v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997), or that the individual in question was a person with final policymaking authority who made a deliberate choice to either deprive plaintiff of some constitutional right, *see, West v. Waymire*, 114 F.3d 646, 651–52 (7th Cir.) *cert. denied*, 522 U.S. 932, 118 S.Ct. 337, 139 L.Ed.2d 261 (1997), or acquiesced in such a deprivation turning a "blind eye for fear of what [he] might see,

*Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir.1997).

▪ In *Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court indicated that municipal liability could be triggered by evidence of a single violation of federal rights, accompanied by a showing that the municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, *id.*, at 390, and n. 10. Indeed, an allegation of failure to train may create § 1983 liability where the failure to train "amounts to deliberate indifference to the rights of persons with whom those employees are likely to come into contact." *City of Canton*, 489 U.S. at 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412. To establish liability, the inadequate training "must be closely related to the ultimate injury," *Id.* 489 U.S. at 391, 109 S.Ct. 1197, 103 L.Ed.2d 412, such that constitutional violation would have been avoided if the City had properly trained the officers.

Here, plaintiff claims that the City failed to train its police officers to effectively handle child abuse cases such as the one that occurred here and that such failure to train led to a constitutional violation in this case. In support of this claim, Doe points to the deposition testimony of several officers, all of whom indicate that they do not recall receiving any training relating to child abuse cases or any training with respect to Indiana's child abuse reporting statute. She has also provided expert testimony from Charles Braun wherein he opines about the inadequacy of training, the foreseeability and need for such training and the implications of receiving inadequate training on persons with whom the police come in contact. Defendants move

---

tional statutory obligation to report what he knew to the local child protection services. Thus, the court puts little weight in this argument.

12. Because the court concludes in this fashion, it need not address Raymer's secondary argument that he is entitled to qualified immunity.

to strike the testimony of Braun and rebut Doe's evidence with Defendants' Exhibit 4 (subject to two motions to strike by Plaintiff) which purports to be provisions from a Field Training Officer Program Manual. The Manual is submitted by Defendants to demonstrate that officers are, contrary to their testimony to the contrary, routinely trained in handling child abuse cases.

■ This court needn't decide any of the motions to strike because at this phase of the litigation, they are elementary. As stated above, Doe must demonstrate that the constitutional violation alleged would have been avoided with proper or adequate training. Because this court has already found as a matter of law that no constitutional violation occurred, the lack of any underlying constitutional violations likewise dooms Doe's municipal liability claim based upon a failure to train. *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir.1998) ("A failure to train theory or a failure to institute a municipal policy theory requires a finding that the individual officers are liable on the underlying substantive claim."); *Caricofe v. Mayor and City Council of Ocean City, Maryland*, 2002 WL 482563, *5 (4th Cir.(Md.)) ("Because the police officers did not violate Caricofe's constitutional rights, the other defendants may not be held liable for failing to train or supervise those officers."); *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (holding that a municipality cannot be held liable for an official policy or custom if it has been determined that the individual defendants did not violate the plaintiff's constitutional rights); *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir.2001) ("The law is quite clear in this circuit that a section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."); *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir.1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability."); *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1156 (10th Cir.2001) (concluding that a municipality may be held liable only if the conduct of its employees directly caused a violation of a plaintiff's constitutional rights); *Schulz v. Long*, 44 F.3d 643, 650 (8th Cir.1995) ( "It is the law in this circuit ... that a municipality may not be held liable on a failure to train theory unless an underlying Constitutional violation is located."). Accordingly, Doe's claim for municipal liability based upon its failure to train officers regarding child abuse cases fails. Defendants' Motion for Summary Judgment is GRANTED as to this claim.[13]

### *CONCLUSION*

In sum, Doe has not raised a genuine issue of material fact as to any violation of her clearly established Constitutional rights to support a § 1983 claim nor has she demonstrated that the failure of the City to train its officers resulted in a Constitutional violation. Accordingly, the Defendants' Motion for Summary Judgment is GRANTED; Plaintiff's Motions to Strike (Docket # 21 and Docket # 31) and Defendants' Motion to Strike (Docket # 26) are DENIED as MOOT. The Clerk

---

**13.** To the extent Doe is attempting to assert that Lt. Dunn is a policymaker for the City and that she made a deliberate choice to deprive plaintiff of some constitutional right, this claim clearly fails. Doe has not presented any evidence, other than some speculative testimony, that Dunn is, in fact, a policymaker as opposed to an individual who enforces City policy made by others. Thus, she has not raised a genuine issue of material fact that Dunn is a policymaker for purposes of municipal liability.

is directed to enter judgment in favor of the Defendants.